86 A.3d 771

COMMONWEALTH of Pennsylvania, Appellant

v.

James T. WILLIAMS, Appellee.

Supreme Court of Pennsylvania.

Submitted Nov. 13, 2012.

Decided Feb. 19, 2014.

Heather F. Gallagher, James Bernard Martin, Lehigh County District Attorney's Office, for Commonwealth of Pennsylvania.

Stuart Brian Lev, Defender Association of Philadelphia, for James T. Williams.

James T. Williams, pro se.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Chief Justice CASTILLE.

In this capital case pending on collateral review, the Commonwealth appeals the order of the Court of Common Pleas of Lehigh County granting the discovery motion of appellee James T. Williams in connection with his petition filed under the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S. §§ 9541–9546.[1] The discovery order directed the Commonwealth to produce to appellee's standby counsel "all notes" prepared by the trial prosecutor "concerning interviews, witness preparation sessions, [and] witness examination outlines" for four of appellee's co-conspirators who were also witnesses at trial. At this Court's request, the parties have also addressed the jurisdictional issue of whether the PCRA court's disposition is a collateral order, appealable pursuant to Rule of Appellate Procedure 313. *See* Pa.R.A.P. 313. For the reasons that follow, we conclude that the PCRA court's discovery order is immediately appealable pursuant to Rule 313. We further conclude that the PCRA court did not have "good cause" to issue the discovery order under Rule of Criminal

1. Section 9546(d) of the PCRA provides that "[a] final court order under this subchapter in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules." Furthermore, "[a]n appeal authorized by law from an interlocutory order in a matter shall be taken to the appellate court having jurisdiction of final orders in such matter." 42 Pa.C.S. § 702(a); *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 651 n. 4 (2001).

Procedure 902(E)(2), the rule governing PCRA discovery in capital cases. Accordingly, we vacate the discovery order and remand for final resolution of appellee's PCRA petition.

## I. Background

On May 29, 1995, appellee murdered Richard White, shooting White three times with a semi-automatic weapon during a drug transaction-related robbery, in which appellee was implicated along with co-conspirators Lamar Peterson, Curtis French, Ralph Logan, and Luis Avila. Appellee was charged with first-degree murder and related crimes, and was tried in the Lehigh County Court of Common Pleas, before the Honorable Edward D. Reibman. Appellee represented himself at trial, with standby counsel assisting; then-Assistant District Attorney ("ADA") Maria L. Dantos, Esq., represented the Commonwealth. In 2007, Ms. Dantos was appointed, and later was elected, to the bench of the Lehigh County Court of Common Pleas.

At trial, appellee challenged the credibility of the Commonwealth's witnesses, notably including his co-conspirators and a jail-house informant (a fellow inmate at the Lehigh County Prison, David Miller). Appellee also made personal accusations against the Commonwealth prosecutors, police officers, criminal justice personnel, and against his own standby counsel. Appellee imagined that he was the victim of a vast statewide conspiracy. Appellee called fellow inmate Louis Washington to testify, but then challenged Washington's credibility when Washington testified unfavorably against appellee. Specifically, Washington testified that appellee attempted to threaten him into arranging for an alibi witness (Washington's mother), but instead Washington alerted the Commonwealth. The Commonwealth then arranged for a state trooper to portray Washington's mother at the meeting during which appellee discussed the planned false alibi testimony. An audio recording of the meeting and the trooper's testimony were offered into evidence at trial.

In August 2001, a jury convicted appellee of first-degree murder, robbery, and conspiracy to commit robbery. Appel-

lee was sentenced to death. On direct appeal, this Court affirmed the judgment of sentence. *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523 (2006), *cert. denied*, 549 U.S. 1213, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007). In the 2006 opinion, the Court recounted in detail the events surrounding Mr. White's murder.

On March 9, 2007, appellee filed a *pro se* petition for relief pursuant to the PCRA. Judge Reibman appointed as stand-by counsel the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO").[2] In July 2009, following several extensions, appellee filed an amended 189–page petition for post-conviction relief with the aid of the FCDO. On January 7, 2010, the Commonwealth filed a motion to dismiss the PCRA petition.

In March 2010, Judge Reibman recused himself *sua sponte* in light of Judge Dantos's current position on the Lehigh County bench. Indeed, the entire Lehigh County Court of Common Pleas bench recused and then-President Judge William H. Platt requested the appointment of an out-of-county judge to preside over the matter. This Court appointed Senior Judge John L. Braxton.

In December 2010, Judge Braxton addressed a discovery motion appellee filed in December 2009 and granted appellee relief in part, ordering the Commonwealth to provide appellee with all pre-trial and post-trial communications between witness Louis Washington and former ADA Dantos. The Commonwealth complied. In January 2011, appellee filed a supplementary discovery motion and the PCRA court again granted relief in part, ordering the Lehigh County Prison to

2. The Commonwealth states that "it is questionable whether federal counsel's participation [in this state proceeding] is legal," but does not request that we take any action on this appeal. *See* Commonwealth's Brief, at 9 n. 1 (citing *Commonwealth v. Pruitt*, 615 Pa. 182, 41 A.3d 1289 (2012) (*per curiam* ) (concurring statement by Castille, C.J., joined by McCaffery and Orie Melvin, JJ.)). Since the PCRA petition remains pending, however, and since the source of the FCDO's authority to conduct proceedings in state court is not apparent, upon remand, the PCRA court should resolve the question of the propriety of the FCDO's participation. *See Commonwealth v. Wright*, 621 Pa. 446, 78 A.3d 1070, 1086–87 & n. 18 (2013) (collecting cases).

provide records reflecting the visitors for Commonwealth trial witnesses Miller, Peterson, French, Logan, and Avila, as well as appellee's witness Washington, between May 1, 1995 and January 31, 2001. On March 23, 2011, the court ordered the Lehigh County Prison to produce the prison records of Washington, Peterson, and French. The PCRA court then held hearings on appellee's claims on March 21 through 24, 2011.

On May 23, 2011, standby counsel and appellee renewed a discovery request for the trial notes of former ADA Dantos regarding "interviews, witness preparation sessions, [and] witness examination outlines" for Peterson, French, Logan, and Avila; the Commonwealth did not receive a copy of the motion until May 25, 2011. The PCRA court entered an order—erroneously dated May 20 but docketed on May 25, 2011—granting appellee's motion without first affording the Commonwealth an opportunity to be heard. The order stated that the Lehigh County District Attorney's Office was to "produce to standby counsel" "[a]ll notes" of former ADA Dantos "concerning interviews, witness preparation sessions, [and] witness examination outlines for Luis Avila, Ralph Logan, Lamar Peterson, and Curtis French." On May 27, 2011, the Commonwealth immediately asked for reconsideration.

During the continuation of PCRA hearings, on June 6, 2011, the PCRA court heard argument on the Commonwealth's reconsideration motion. First, the Commonwealth objected that it did not have the opportunity to be heard on appellee's discovery motion before it was granted. Judge Braxton explained that he had signed the order before boarding an airplane, and that he had difficulty communicating with the parties because he presided over cases in numerous counties throughout Pennsylvania. Judge Braxton did not identify any exigency to defeat the Commonwealth's right to respond before the Commonwealth was ordered to turn over material from its trial file. On the discovery motion's merits, the Commonwealth argued that the motion should not have been granted because it requested material protected by the work product doctrine and did not meet the "good cause" standard set forth in Criminal Rule 902(E)(2) (no discovery permitted in

first capital PCRA proceeding except upon leave of court after showing of good cause). The Commonwealth also asked the Court to review former ADA Dantos's testimony from the earlier hearing because she had testified that she did not prepare notes related to all of the witnesses, and that, if any of the information she had gleaned during pre-trial interviews had been material, exculpatory or impeaching she would have disclosed it under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Appellee responded by claiming that the duty to disclose defeats the work product doctrine. Furthermore, according to appellee, he did not have to accept or rely on what former ADA Dantos said about the information contained in her file notes, because her testimony that the "witnesses were changing the stories to her" gave him good cause for discovery of her notes under *Brady. See* N.T., 6/6/11, at 204–08, 210, 214–15. The PCRA court then denied the motion for reconsideration but stayed its discovery order to allow the Commonwealth to pursue this appeal. *Id.* at 219. The court ordered that the file notes be preserved, and the Commonwealth complied. The Commonwealth timely appealed the PCRA court's discovery order. In the meantime, the PCRA court proceeded with hearings on appellee's PCRA petition. The PCRA court did not file a Pa.R.A.P. 1925 opinion explaining its discovery order, nor did it direct the Commonwealth to file a Statement of Errors Complained of on Appeal.

In September 2011, this Court placed the appeal on hold pending resolution of the appeals in *Commonwealth v. Harris,* 8 EAP 2009 (later decision reported at 612 Pa. 576, 32 A.3d 243 (2011)), and *Commonwealth v. Pruitt,* 630 CAP (later decision reported at 615 Pa. 182, 41 A.3d 1289 (2012) (*per curiam* )). Having resolved those appeals, the Court acted upon the parties' jurisdictional statements and ordered the matter to be submitted on the briefs. In a *per curiam* order entered on May 1, 2012, we noted that consideration of jurisdiction was postponed to the merits stage, and directed the parties to brief the following issue before addressing their substantive claims:

1. Whether the PCRA court's discovery order is appealable as a collateral order under Pa.R.A.P. 313 and this Court's decisions in *Commonwealth v. Harris* [612 Pa. 576], 32 A.3d 243 (Pa.2011), *Commonwealth v. Kennedy* [583 Pa. 208], 876 A.2d 939 (Pa.2005), [and] *Commonwealth v. Dennis* [580 Pa. 95], 859 A.2d 1270 (Pa.2004), and specifically:

(a) whether PCRA discovery orders that allegedly violate rules of discovery, *see e.g.,* Pa.R.Crim.P. 902 or this Court's decisions as to the parameters of permissible discovery, *see e.g., Commonwealth v. Williams* [557 Pa. 207], 732 A.2d 1167 (Pa.1999), are collateral orders under Rule 313;

(b) whether an assessment of the merits of the challenge to the PCRA discovery order may be used to differentiate those discovery orders that are appealable under Rule 313 from those discovery orders that are not.

*Order dated 5/1/12, No. 627 CAP.* In addition, the Commonwealth raised the following substantive claims in its appeal:

2. Was the PCRA court's grant of defendant's Renewed Motion for Discovery erroneous where the items ordered to be provided are clearly privileged pursuant to the work-product doctrine and Pa.R.Crim.P. 573, and are not discoverable under the circumstances and facts in this case?

3. Was the PCRA court's grant of defendant's Renewed Motion for Discovery fundamentally erroneous because defendant had clearly not established "good cause" as required by Pa.R.Crim.P. 902(E)(2)?

Commonwealth's Brief, at 3–4.

■ We will begin by addressing the jurisdictional issue. *See United States Orgs. for Bankr. Alternatives, Inc. v. Dep't of Banking,* 611 Pa. 370, 26 A.3d 474, 476–77 (2011). "A jurisdictional challenge is typically a threshold question, with review of the substantive issues following a jurisdictional question only if the court is found to possess jurisdiction." *Burger v. Sch. Bd. of McGuffey Sch. Dist.,* 592 Pa. 194, 923

A.2d 1155, 1161 (2007) (citing *MCI WorldCom, Inc. v. Pa. Pub. Util. Comm'n*, 577 Pa. 294, 844 A.2d 1239, 1249 (2004)).

## II. Jurisdiction

### A. Arguments

The Commonwealth argues that this Court has jurisdiction over its appeal from the PCRA court's discovery order, which permitted appellee access to the notes of the trial prosecutor regarding pre-trial interviews, witness preparation sessions, and witness examination outlines for witnesses Peterson, French, Logan, and Avila. According to the Commonwealth, the discovery order is a collateral order appealable under Appellate Rule 313. The Commonwealth notes that, to be appealable under Rule 313, an order must be separable from the main cause of action; the right implicated must be important; and the claim must be such that, if immediate review is denied, the claim will be irreparably lost. Commonwealth's Brief, at 18 (citing Rule 313 and *Harris*, 32 A.3d at 248). The order here, the Commonwealth asserts, meets all three requirements.

First, the Commonwealth argues that the discovery order, which rejected the work product doctrine protection asserted by the Commonwealth, is separable from and collateral to the main dispute regarding appellee's numerous PCRA claims alleging a wrongful conviction and improper sentencing. The Commonwealth notes that the order is not fatally entangled with resolution of the PCRA claims and, in fact, PCRA proceedings continued after the Commonwealth filed its notice of appeal. Second, according to the Commonwealth, protecting the work product of an attorney in a criminal case is an issue recognized as "important" because the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," which is vital "in assuring the proper functioning of the criminal justice system." Commonwealth's Brief, at 23 (quoting *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The Commonwealth states

further that this appeal addressing an asserted entitlement to a prosecutor's notes to attempt to establish a *Brady* violation affects individuals other than the parties in this appeal.

Finally, the Commonwealth claims that its right to non-disclosure of the trial prosecutor's work product will be irreparably lost if review is deferred, because review after disclosure is inadequate to vindicate the right. The Commonwealth notes that, in *Commonwealth v. Harris, supra*, this Court recently declined to follow the U.S. Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), a case which held that federal discovery orders that allegedly violate the attorney-client privilege are not immediately appealable. The *Mohawk* Court reasoned that an appeal following a final decision below could adequately vindicate the privilege, since the aggrieved litigant could proceed to a new trial at which the privileged material would be excluded. The Commonwealth explains that the *Harris* Court, which considered a PCRA petitioner's appeal, rejected the premise that an appeal following judgment would adequately protect a litigant in Pennsylvania, given that "the bell cannot be unrung" and the Court's prior decisions in this area. Commonwealth's Brief, at 19–20 (citing *Harris, supra; Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999)).

Once a prosecutor's work product documents are disclosed, the Commonwealth argues, the information may be repeated, copied, transferred, and reproduced at will; unless immediately appealable, an erroneous order would irremediably reveal information to a defendant and his counsel. According to the Commonwealth, a defendant would therefore be "unjustly enriched with indiscoverable [sic] materials" that could be used to generate derivative materials and claims. The prospect of such disclosure would affect future prosecutions, by altering the course of investigations, affecting trial preparation, and changing the nature of witness examinations. Deferring review in cases where the work product doctrine is asserted, the Commonwealth claims, would not merely be inconvenient but would effectively vitiate the interests protect-

ed by the doctrine. The Commonwealth views the work product doctrine as protecting privileged information and, as a result, asserts that the law is settled regarding the appealability of the order below. Commonwealth's Brief, at 25 (citing *Harris, supra; Commonwealth v. Kennedy,* 583 Pa. 208, 876 A.2d 939 (2005); *Commonwealth v. Dennis,* 580 Pa. 95, 859 A.2d 1270 (2004)).

The Commonwealth also argues that judicial economy is served by permitting an appeal as of right under Rule 313 for orders alleged to violate PCRA discovery rules. *Id.* (citing Pa.R.Crim.P. 902(E)). Under Rule 902(E)(2), the Commonwealth notes, discovery is not as of right; rather, it is prohibited unless the capital PCRA petitioner shows good cause. According to the Commonwealth, it is important to permit review to reaffirm that discovery orders like this one are overly broad, as they permit the capital petitioner "to go rummaging about" in the trial prosecutor's files. *Id.* at 28 (citing *Commonwealth v. Pruitt,* 41 A.3d at 1290 (Castille, C.J., concurring, joined by McCaffery and Orie Melvin, JJ.)). The delays accompanying erroneously broad discovery orders, the Commonwealth argues, might benefit certain PCRA petitioners but would harm victims, their families, and defendants with meritorious claims. Moreover, the Commonwealth reemphasizes the irremediable direct and collateral damage that disclosure of work product-protected documents can cause. Finally, the Commonwealth asserts that alternative avenues of review, such as certification of an interlocutory order pursuant to Rule 1311 of the Rules of Appellate Procedure, are "unrealistic and insufficient" where a discovery order regarding a prosecutor's files and work product is implicated.

The Commonwealth ultimately argues in favor of a holding that all PCRA discovery orders alleged to violate Rule 902 should be deemed appealable collateral orders under Rule 313, since a bright-line rule would provide clear guidance. Under that approach, the Commonwealth states, a review of the merits of the discovery question and the underlying merits issue to which discovery relates would be unnecessary to resolve the jurisdictional question. In the alternative, the

Commonwealth suggests that the Court could consider the merits of the discovery dispute in determining whether jurisdiction is proper so as to deter prosecutors from seeking interlocutory review of frivolous challenges to PCRA discovery orders. Commonwealth's Brief, at 33 (citing *Rae v. Pa. Funeral Directors Ass'n*, 602 Pa. 65, 977 A.2d 1121, 1128 (2009)).

In response, appellee relies on *Mohawk* to argue that the discovery order here is not an appealable collateral order. Appellee says this appeal is distinguishable from *Harris, Kennedy,* and *Dennis* because the U.S. Supreme Court's decision in *Brady* required the prosecutor to disclose her preparation notes. Appellee argues that this appeal does not implicate the attorney-client privilege or the work product doctrine. Citing *Mohawk*, appellee asserts that the appeal is from a routine PCRA discovery order that would waste judicial resources and reduce the PCRA court's ability to control the discovery process. Appellee's Brief, at 11 (citing *Mohawk*, 558 U.S. at 112, 130 S.Ct. 599).

Furthermore, appellee argues that we should hold, pursuant to *Mohawk*, that all discovery orders requiring the prosecution to disclose alleged *Brady* material are not appealable collateral orders. *Id.* at 11–12 (citing 558 U.S. at 113, 130 S.Ct. 599). Appellee urges that, although this Court has rejected the reasoning of *Mohawk* in order to protect "the free airing of concerns that privileges are intended to foster," this confidentiality concern "has no place" in cases where prosecutors interview witnesses in anticipation of their trial testimony if their notes regarding those interviews might yield evidence favorable to the defendant. *Id.* at 12 (citing *Harris*, 32 A.3d at 249). Appellee argues that this Court should always yield to the discretion of the PCRA judge and not permit the Commonwealth to seek interlocutory vindication of the work product doctrine.

Appellee further asserts that the circumstances here justify disclosure because the trial prosecutor's notes "could likely influence the outcome of the PCRA petition." In particular, appellee asserts that the notes will corroborate his claims of

prosecutorial misconduct, *Brady* violations, and actual innocence. If evidence is exculpatory or may impeach a witness, appellee says, the "courts" have an obligation to disclose it. Appellee's Brief at 13 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)).

Appellee also argues that the comment to Criminal Rule 573 dictates that the trial prosecutor's notes are discoverable. Rule 573(B)(2)(a) provides that, upon a motion for pre-trial discovery, the court has discretion to order the Commonwealth to allow a defendant's attorney to inspect, copy, or photograph certain types of evidence identified by the defendant, if the evidence is material to the defense, the request is reasonable, and disclosure is in the interests of justice. *See* Pa.R.Crim.P. 573(B)(2)(a). The comment to Rule 573 clarifies that this rule applies "only to court cases." Appellee finds significance in the fact that the comment to the rule notes that *Brady v. Maryland* applies "to all cases, including court cases and summary cases." Pa.R.Crim.P. 573 cmt. Appellee construes the comment as conferring a right to PCRA discovery of the prosecutor's notes when *Brady* claims are at issue.

Appellee also argues that the Commonwealth's appeal does not meet the requirements of Rule 313 because the PCRA court's order is "inextricably intertwined" with the merits of appellee's *Brady* claim. Appellee speculates that the PCRA court's order is "likely to provide evidence supporting [his] *Brady* claims." Appellee disputes that his discovery request was a "fishing expedition" and asserts that the discovery order was supported by testimony at trial and at the PCRA hearings. Appellee's Brief, at 14.[3]

---

**3.** Finally, appellee suggests that this Court should revise the PCRA procedural rules "to upgrade protections of an accused's constitutional rights against misconduct of overzealous prosecutors," including liberal access to prosecutors' files in death penalty cases; providing for the preservation and production to the defense of the prosecutor's notes regarding key witnesses; and instructing the PCRA court to review materials related to any discovery request *in camera* before ruling on the request. Appellee's Brief, at 16. Appellee further argues that, following the *in camera* review he proposes, the PCRA court should make a record finding if denying a disclosure request; place the materials requested under seal and make them part of the record; and

## B. Analysis

■ As a general matter, Pennsylvania law permits appeals only from final orders, subject to limited exceptions. The exceptions allow the immediate appeal of otherwise interlocutory orders, and include permitting an appeal as of right from a collateral order as defined by Appellate Rule 313(b). Rule 313(b) defines a collateral order as an order that is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

This Court has moved towards a category-wide exception to discovery orders that are alleged to violate a protected privilege, such as the attorney-client privilege or the work product doctrine. *See Harris*, 32 A.3d at 249; *Dennis*, 859 A.2d at 1278. Indeed, the *Harris* Court broadly stated that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313." 32 A.3d at 252. Of course, that broad conclusion must be tempered by an appreciation that the collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine and in recognition that a party may seek an interlocutory appeal by permission pursuant to Appellate Rule 312. *See Rae*, 977 A.2d at 1126. Therefore, even following *Harris*, in cases where the propriety of an appeal involving the attorney-client privilege or the work product doctrine is contested in good faith, it is prudent to require the appealing party to establish that Rule 313(b) is satisfied. Such a requirement can serve a purpose similar to the requirement, in the context of other

sanction the Commonwealth "if it failed to preserve notes of exculpatory/*Brady* materials." *Id.*

In point of fact, we note, Rule 902 already distinguishes between capital and noncapital cases; in non-capital cases, "no discovery shall be permitted" absent "a showing of exceptional circumstances." Pa. R.Crim.P. 902(E)(1). In any event, appellee was not granted discovery below premised upon the new and broader rules of PCRA discovery he would have this Court devise. The Commonwealth's appeal challenging the propriety of the adverse order issued under the existing discovery rule does not encompass appellee's present request to rewrite the rules. Thus, we do not pass upon this claim.

Commonwealth appeals (most commonly from suppression rulings), that the Commonwealth certify that the order at issue will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d); *Commonwealth v. James*, 620 Pa. 465, 69 A.3d 180, 185 (2013).[4]

■ Thus, we will proceed to analyze this appeal under Rule 313. Whether an order is appealable under Rule 313 is a question of law. As such, our review is plenary. *See Rae*, 977 A.2d at 1126 n. 8.

■■ An order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute. *Kennedy*, 876 A.2d at 943. The Court has taken a practical approach when reviewing separability, recognizing that some interrelatedness with the main issue is tolerable. So long as the issue "is conceptually distinct from the merits . . ., that is, where, even if 'practically intertwined with the merits, [it] nonetheless raises a question that is significantly different from the questions underlying [the party's] claim on the merits,' " it is separable from the main cause of action. *Pridgen v. Parker Hannifin Corp.*, 588 Pa. 405, 905 A.2d 422, 433 (2006) (quoting *Johnson v. Jones*, 515 U.S. 304, 314, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

In this case, the discovery order directs the disclosure of the prosecutor's pre-trial notes related to certain witnesses/co-conspirators who later testified at trial. The primary argument advanced by appellee is that the issue raised by the propriety of the discovery order is inseparable from his underlying issue, as he believes they both involve *Brady* disclosure. But, his argument is tautological.

4. Our concern in this regard is whether the Court must be bound by a party's assertion that privileged or work product material is at issue in order to establish an immediate appeal as of right. Where the propriety of an appeal prosecuted under Rule 313 is contested in good faith, the better way to preserve the traditional balance between the final judgment requirement and the collateral order doctrine may be to require a certification or, absent that process, to analyze the appeal under the test in Rule 313(b). Accordingly, we will refer the matter to the Appellate Court Procedural Rules Committee to consider the advisability of a certification rule.

Rule 902(E)(2) provides that: "On the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings except upon leave of court after a showing of good cause." The rule establishes no discovery as the default, with an exception when good cause is shown by the party requesting discovery. The rule does not provide for any specific type of favored exception, such as where a *Brady* claim is at issue. And, notably, in a point we will address again *infra*, *Brady* does not purport to speak to, or govern, the distinct question of the scope of discovery under the PCRA, or indeed the scope of discovery under any state's post-conviction review regime. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68–69, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). Whatever else appellee may muster to support his collateral *Brady* claim, the Commonwealth having contested his request for the prosecutor's trial notes, those notes cannot prove his merits claim unless the work product privilege is first defeated; and the privilege cannot be defeated absent a showing of good cause entitlement under Rule 902(E)(2). We recognize that *Brady* claims, like *Batson*[5] claims alleging racial discrimination in jury selection, are peculiarly susceptible to a defense desire to see the prosecutor's trial notes. But, *Brady* confers no automatic right to discover such notes and, on PCRA review, the party seeking discovery must show "good cause" for discovery in all instances. Here, the discovery order question—measured by whether the PCRA court abused its discretion in ordering disclosure over assertions of work product protection and an absence of good cause shown—is entirely distinct from the merits *Brady* claim appellee hopes to develop. Thus, the first prong of the collateral order test is met.

■ The second prong, the importance prong, considers whether the order involves rights deeply rooted in public policy going beyond the particular litigation at hand. An issue

5. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Notably, two of the leading cases involving the appealability of PCRA discovery orders involved *Batson* or *Batson*-derivative claims. *See Commonwealth v. Dennis*, 580 Pa. 95, 859 A.2d 1270 (2004); *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649 (2001).

is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. It is not sufficient that the issue is important to the particular parties involved. *See Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1213–14 (1999). In this case, the right asserted by the Commonwealth is the work product doctrine.[6]

As noted above, the Court has generally viewed discovery orders implicating claims of privilege or work product to be appealable under Rule 313. *Commonwealth v. Harris*, 32 A.3d at 249; *Commonwealth v. Kennedy*, 876 A.2d at 944; *Commonwealth v. Dennis*, 859 A.2d at 1278; *Ben v. Schwartz*, 729 A.2d at 551–52. These decisions recognize that exercise of a privilege is an important right deeply rooted in public policy. Thus, in *Dennis*, the Court considered whether the work product doctrine shielded a prosecutor's *voir dire* notes from discovery under the PCRA, where the defendant was pursuing a claim deriving from *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court explicitly recognized the importance of the doctrine, explaining that "[i]t is beyond question that exercise of a privilege is an important

---

**6.** The Commonwealth refers to the protections afforded work product as a "privilege." More precisely, the U.S. Supreme Court has referred to the doctrine as a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.' " *United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *see also Commonwealth v. Kennedy*, 876 A.2d at 945. The work product doctrine does not fit neatly into the traditional privilege concept, which addresses a legal right or immunity granted to a person or class of persons: for example, the attorney-client privilege protects the client from testimonial disclosure of confidential communications with his attorney. *See* 42 Pa.C.S. § 5916 ("In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."). The work product doctrine, on the other hand, is an exemption from discovery for certain types of documents, as illustrated in Criminal Rule 573(G): "Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney ... or members of their legal staffs." For ease of discussion, we may refer to the doctrine as a privilege, while still appreciating the complexity.

right deeply rooted in public policy. The work product doctrine is one of the most fundamental tenets of our system of jurisprudence and ... inures most notably to the benefit of criminal defendants." *Dennis,* 859 A.2d at 1278.[7]

The *Dennis* Court further found that the question of a PCRA petitioner's right to discovery of a prosecutor's pre-trial and trial notes in order to establish a claim of misconduct affected individuals other than those involved in the case. Additionally, *Dennis* concluded that the decision in *Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d 649 (2001) did not foreclose satisfaction of the importance prong. This was so because *Tilley* held that a PCRA petitioner could not pursue a claim of racial bias during jury selection premised upon the non-retroactive decision in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (which extended the rule in *Batson v. Kentucky* to challenges brought by white defendants), because of the state of the law at the time of his trial, and thus, he could not show "good cause" for discovery of the prosecutor's notes. *Dennis,* 859 A.2d at 1278. Thus, as a general matter, the Court has considered PCRA discovery orders directing disclosure of privileged material, including a prosecutor's trial notes, to be appealable pursuant to Rule 313.

Of course, the landscape of the federal collateral order doctrine was altered by the U.S. Supreme Court's decision in *Mohawk,* which is frequently cited by appellee. *Mohawk* held that rulings adverse to an asserted attorney-client privilege

7. Similarly, the U.S. Court of Appeals for the Third Circuit explicated in *In re: Ford Motor Company,* 110 F.3d 954 (3d Cir.1997) (cited with approval by this Court in *Geniviva* ), that the "attorney-client privilege is at the heart of the adversary system; its purpose is to support that system by promoting loyalty and trust between an attorney and a client" and seeks to promote the administration of justice. *Ford,* 110 F.3d at 961; *see also Harris,* 32 A.3d at 249 (attorney-client privilege promotes frank discussions and disallowing immediate appeal may chill those discussions). As more directly relevant here, the *Ford* court then added that: "For similar reasons, the work product doctrine, at least at its 'core,' satisfies the importance criterion. Like the attorney-client privilege, the work product doctrine seeks to promote the adversary system ... 'by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation.' " 110 F.3d at 962 (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3d Cir.1991)) (footnote omitted).

were ineligible for review under the federal collateral order doctrine because the rulings were not effectively unreviewable following final judgment. But, this Court has already considered the effect of *Mohawk* in *Harris, supra,* and did not follow the decision as a matter of Pennsylvania law. *Harris* considered whether *Mohawk* should alter this Court's approach to analyzing collateral orders implicating privileged material in the context of Harris's appeal of a PCRA court order granting the Commonwealth's motion to declare his "psychologist-client" privilege waived and permitting the Commonwealth to hire a psychologist who had testified on Harris's behalf at trial. The Court was concerned that the "free airing of concerns that privileges are intended to foster" would be undermined by following *Mohawk. Harris,* 32 A.3d at 249. Furthermore, the Court explained that the alternate theoretical methods for obtaining interlocutory review discussed in *Mohawk* were either unavailable in Pennsylvania or "insufficient to preserve the vitality of privileges." *Id.* at 250. Given the *Harris* Court's decision not to follow *Mohawk,* Pennsylvania law on the collateral order doctrine, in this area, has remained constant.

In this case, the PCRA court's discovery order directed the Commonwealth to produce the trial prosecutor's notes regarding "interviews, witness preparation sessions, [and] witness examination outlines" for four witnesses. The order was issued over the Commonwealth's objection that the material was protected by the work product doctrine, a doctrine, as stated, that is deeply rooted in public policy. The Commonwealth's argument is certainly colorable, as the work product doctrine is generally understood to protect an attorney's work compiled in preparation for trial which necessarily includes interviews, statements, memoranda, correspondence, witness examination outlines, and mental impressions—the sort of notes the PCRA court ordered the Commonwealth to provide to appellee. *See Kennedy,* 876 A.2d at 945 (quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *see also* Pa.R.Crim.P. 573(G).

We need not determine at this juncture whether the prosecutor's notes are in fact protected or are discoverable irrespective of a work product exemption. The jurisdictional point is that there are some rights of sufficient importance to the administration of justice as to require an avenue for vindication in advance of final judgment below. A colorable assertion that the prosecutor's pre-trial notes, which the PCRA court ordered to be disclosed under Rule 902(E)(2), were protected by the work product privilege is such a right.[8] Accordingly, the importance prong is met and we turn to whether the claim will be irreparably lost if immediate appeal is not allowed.

The Court has stated that "[t]here is no effective means of reviewing[,] after a final judgment[,] an order requiring the production of putatively protected material." *Kennedy,* 876 A.2d at 944 (quoting *Ben,* 729 A.2d at 552). More recently, *Harris* followed this understanding of irreparable loss, noting that "[o]nce putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal." *Harris,* 32 A.3d at 249. In short, resolution of the third prong is straightforward—once the prosecutor's notes are disclosed, the disclosure cannot effectively be undone.

Applying the collateral order test to the case *sub judice,* this Court balances the importance to the administration of justice of ensuring against erroneously ordered disclosures of privileged work product material against the efficiency interests advanced by the final judgment rule. Given our decisional law, there can be no doubt as to which way the scale tips. Post-disclosure review is not an effective remedy for an erroneous order affecting the work product privilege; and, such orders can have a chilling effect upon trial preparation in other cases, which can operate to harm both the Commonwealth and the defense. Accordingly, we hold that a PCRA

8. Our decision not to assess the discovery merits in order to assess the "importance" of the claim is consistent with prior case law where we have exercised jurisdiction over a discovery order alleged to violate a privilege, but ultimately determined that the privilege was not implicated. *See Ben,* 729 A.2d at 553 (jurisdiction proper under Rule 313, but Bureau of Professional and Occupational Affairs investigative files not protected by executive privilege in civil proceeding).

court discovery order which by its plain terms embraced materials subject to work product privilege, such as this one, is appealable as of right pursuant to Rule 313.

### III. Discovery Order Merits

Having concluded that we have jurisdiction over the PCRA court's discovery order, we must next consider whether the PCRA court abused its discretion in granting appellee's discovery request.

### A. Arguments

According to the Commonwealth, the PCRA court abused its discretion for two reasons: (1) the trial prosecutor's notes were protected by the work product doctrine and (2) appellee did not meet the Rule 902(E)(2) good cause standard for permitting discovery in a capital PCRA proceeding.

■ The Commonwealth begins by noting that appellee has no "general right to review the prosecutor's files." According to the Commonwealth, the work product doctrine protects the work of an attorney as reflected, for example, "in interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs." The purpose of the doctrine is to protect the privacy of a lawyer from "unnecessary intrusion by opposing parties and their counsel." Such privacy is necessary as a lawyer differentiates relevant from irrelevant facts, considers legal theories, and devises a strategy in preparing a case. If these notes are deemed discoverable upon demand, the Commonwealth argues, prosecutors could respond by failing to put such matters into writing, a practice which the U.S. Supreme Court has recognized would lead to "inefficiency, unfairness and sharp practices," in trial preparation and legal advice. Commonwealth's Brief, at 35 (quoting *Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385).

■ The Commonwealth also notes that Criminal Rule 573(G), governing pre-trial discovery, specifically provides that disclosure "shall not be required" of an attorney's work product. Rule 573(B)(2) vests discretion in the trial court to order pre-trial disclosure of notes, but significantly, only those notes

that are a "substantially verbatim" record of a witness's statement; an attorney's imprecise summary, selected statements, interpretations, or recollections, are not subject to disclosure under the rule. The Commonwealth further explains that the work product doctrine is an exception to the general rules of pre-trial discovery and is a qualified privilege. Commonwealth's Brief, at 38 (citing *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980, 984–85 (1984)). Because this is a PCRA proceeding rather than a trial, the Commonwealth argues, the discovery rules must be interpreted strictly, against the party seeking disclosure.

The Commonwealth then explains that the trial prosecutor's notes at issue here "clearly constitute work product." *Id.* Indeed, former ADA Dantos testified at a March 24, 2011, PCRA evidentiary hearing that she had "probably not" made notes or reports of her interviews with Avila, Logan, or Washington. The trial prosecutor explained that she generally did not take notes, write reports, or document witness interviews, and that she followed that practice in this case. Instead, her practice was to simply talk to the witnesses. The trial prosecutor testified that she would have noted questions upon which to follow up at trial to explain discrepancies between a witness's pre-trial statements and trial testimony, for example with respect to Logan's trial statement that he hit Richard White with the gun with which appellee eventually murdered White. The trial prosecutor further testified that she had not made notes of any agreements with the witnesses, who had plea agreements to testify truthfully in federal cases related to several robberies. The trial prosecutor also stated that, while she discussed the witnesses' prior statements with them, neither Avila nor Logan told her that their initial statements had been false; she continued that, in her experience in preparing witnesses for trial, additional information, changes in details, and explanations often came to light as a result of trust developed over the ongoing relationship. But, even though that development may have occurred with Avila and Logan, neither witness changed his core account that appellee killed Richard White. Indeed, according to the trial

prosecutor, if she had received any **exculpatory** evidence from the witnesses, she would have turned it over to appellee (who was representing himself) in court, on the record. The Commonwealth argues that former ADA Dantos's testimony is clear that she did not create verbatim, or substantially verbatim, notes or reports of her interviews with the various witnesses; and any notes regarding planned lines of questioning of her witnesses at trial are plainly work product, not subject to disclosure. The Commonwealth then reemphasizes the deleterious side-effects of permitting disclosure of these notes to appellee.

Next, the Commonwealth argues that appellee did not establish good cause, noting that a showing of good cause entails more than "a generic demand for potentially exculpatory evidence;" also, the basic existence of the requested documents cannot be merely speculative. Commonwealth's Brief, at 45–46 (citing Pa.R.Crim.P. 902(E)(2); *Commonwealth v. Bryant,* 579 Pa. 119, 855 A.2d 726, 750 (2004); *Commonwealth v. Carson,* 590 Pa. 501, 913 A.2d 220, 261 (2006)). The Commonwealth asserts that appellee made no showing of good cause here because the trial prosecutor specifically testified that she did not make notes or reports of her interviews with witnesses outside of those notes protected by the work product doctrine, and that she would have turned over any exculpatory evidence. Appellee therefore failed to show that the trial preparation notes he requested either existed or were exculpatory; and appellee produced no evidence to substantiate his speculation that the trial testimony of the various witnesses must have materially differed from their unrecorded pre-trial statements to the trial prosecutor.

 The Commonwealth further disputes appellee's claim that it did not comply with its duty to disclose pursuant to *Brady v. Maryland.* The Commonwealth notes that the *Brady* obligation extends to evidence favorable to the accused that is material to guilt or to punishment, including impeachment evidence if it involves a witness whose reliability is determinative of guilt or innocence. But, the Commonwealth reminds, *Brady* did not create a constitutional right to broad

discovery in a criminal case: "[T]he constitutional duty to disclose under *Brady* encompasses only exculpatory evidence, it is not a general rule of discovery in criminal cases." Commonwealth's Brief, at 47–49 (quoting *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 297 (1998)). Relatedly, *Brady* does not require disclosure of information that is merely "not inculpatory," even if the information may form the basis for some argument by the defendant. The Commonwealth stresses that appellee bore the burden to establish that the prosecutor's work product contained exculpatory information that would undermine the truth-determining process to such an extent "that no reliable adjudication of guilt or innocence could have taken place." *Id.* at 50 (citing 42 Pa.C.S. § 9543(a)(2)(i)).

 Citing this Court's decision in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1176 (1999), which in turn was characterizing the U.S. Supreme Court's decision in *Pennsylvania v. Ritchie*, 480 U.S. at 59, 107 S.Ct. 989 the Commonwealth further notes that "the Commonwealth is, in the first instance, the judge of what information must be disclosed." *Id.* at 51, 107 S.Ct. 989. The Commonwealth invokes equally settled law that the government is presumed to have fulfilled its *Brady* obligations, absent a "plausible showing to the contrary." *Id.* (quoting *Williams, supra* ). According to the Commonwealth, appellee failed to carry his good cause burden because his allegations regarding both the existence of, and the exculpatory nature of, helpful notations in the prosecutor's file were purely speculative. In contrast, what actual evidence there was below—the testimony of former ADA Dantos, an officer of the court—indicated that notes from interviews with the various witnesses did not exist (much less verbatim accounts of statements), and that the witnesses did not provide any exculpatory statements. The Commonwealth also emphasizes that appellee had ample opportunity to cross-examine the witnesses at trial regarding any inconsistencies between their trial testimony and prior statements, as well as their federal plea agreements; his assertions that further evidence must exist, which was the premise for his

PCRA discovery request, either were speculative or were based upon misrepresentations of the record. The Commonwealth thus concludes that the PCRA court plainly abused its discretion in ordering it to disclose the trial prosecutor's notes.

Appellee first responds that the PCRA court order should be affirmed because disclosure of a prosecutor's notes "come[s] under the *Brady* Rule" and is mandatory. As noted earlier, appellee relies on the comment to Rule 573 to suggest that an exception exists for *Brady* material pursuant to Rule 573(G), the rule of procedure stating that pre-trial disclosure of work product shall not be required. *See* Appellee's Brief, at 16 (citing Pa.R.Crim.P. 573(G) and comment).

Appellee next argues, in essence, that former ADA Dantos was not forthright in her testimony. Appellee alleges that the trial prosecutor actually learned of recanting or contradicting accounts from the witnesses during her interviews in anticipation of trial; that she memorialized the recantations and contradictions in some fashion; and that the accounts were material in the *Brady* sense because, he says, a change in a witness's account of the crime is exculpatory.

The first focus of appellee's argument is on Avila's 1996 recantation. According to appellee, Avila was first interviewed in 1995, but then changed his story in 1996, after he was released from jail. Appellee alleges that he was never given this information. Appellee acknowledges that the trial prosecutor testified at the PCRA hearing that she did not recall specific differences in Avila's pre-trial witness preparation; yet, he still argues that there must have been differences in Avila's pre-trial accounts to the trial prosecutor, that the differences must have been memorialized in her notes, and that the information was exculpatory. Appellee argues that other witnesses changed their stories as well, and that the changes were acknowledged by the trial prosecutor. He claims that his discovery request sought leave to look through the prosecutor's notes and see if there was any undisclosed memorialization of the changed accounts. For example, he says, Ralph Logan admitted to hitting the victim with the butt of a gun at trial and Logan further testified that he told this to

the trial prosecutor. Appellee contends that this change in Logan's story was never disclosed to him prior to trial, or at any time since.[9] The essence of appellee's argument is that the Commonwealth's alleged failure to disclose supposed inconsistencies in the witnesses' statements resulted in a trial by ambush. *See also* Renewed Motion for Discovery, 3/25/2011, at ¶ 5 ("The Commonwealth did not disclose any of this impeachment information to [appellee] prior to trial and so did not give him a fair opportunity to prepare.").

### B. Analysis

Appellate courts review PCRA discovery orders for an abuse of discretion. *Williams*, 732 A.2d at 1175 n. 5. The specific determinative question is that posed second by the Commonwealth, *i.e.*, whether the PCRA court had "good cause" to issue its discovery order under the governing rule, Pa.R.Crim.P. 902(E)(2). We recognize, however, that the analysis inevitably may entail some consideration of the parties' subsidiary dispute concerning the work product doctrine and the relevance, if any, of the fact that appellee's underlying claim sounds in *Brady*. By way of PCRA discovery background, it is important to reemphasize that, although substantive *Brady* claims may be cognizable under the PCRA, *Brady* does not govern the question of the scope of discovery under the PCRA. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. at 68–69, 129 S.Ct. 2308. Furthermore, the Commonwealth is correct that there is no general right, under *Brady* and our Criminal Rules as a trial matter, or under Rule 902(E)(2) as a capital PCRA matter, to inspect the prosecutor's file. *Brady* imposes an affirmative and continuing duty upon the government to disclose exculpatory information, but it establishes no specific right in the defendant to review the Commonwealth's file to see, for example, if he

9. Logan testified at trial and admitted that he had changed his story and ultimately admitted that he hit the victim with the butt of his gun. It is unclear what relevance this particular discrepancy has to a collateral claim sounding in *Brady* materiality. Indeed, if Logan's testimony at trial provided a basis for a *Brady* claim of failure to disclose a prior exculpatory statement, appellee should have raised the claim at that time.

agrees with the Commonwealth's assessment and representation. The U.S. Supreme Court has explained the operation of *Brady* as follows:

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files.... Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966), this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland* ..., it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one").

*Pennsylvania v. Ritchie,* 480 U.S. at 59–60, 107 S.Ct. 989 (additional citations and footnotes omitted). This Court elaborated upon the limitations of *Brady* in the capital PCRA context in *Williams, supra:*

Nor would *Brady v. Maryland* have required the PCRA court to enter a specific order directing the production of exculpatory documents from the Commonwealth. While the Commonwealth's obligations under *Brady* continue through all stages of the judicial process, *see Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987), the Commonwealth is, in the first instance, the judge of what information must be disclosed.... *See generally Commonwealth v. Copenhefer,* 553 Pa. 285, 319, 719 A.2d 242, 259 (1998) (stating that it is the petitioner's burden to

"prove, by reference to the record, that evidence was withheld or suppressed by the prosecution").

*Williams,* 732 A.2d at 1175–76; *see also Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004).

Given this background, we may summarily reject appellee's argument that he has a right to PCRA discovery conferred by the commentary to Criminal Rule 573 merely because he has raised a *Brady* claim. This argument misperceives Rule 573 and its associated commentary, as well as the scope of *Brady.* Chapter 5 of the Criminal Rules governs "Pretrial Procedures in Court Cases," with Rule 573 specifically addressing "Pretrial Discovery and Inspection." Rule 573(B)(2)(a) provides that, upon a motion for pre-trial discovery, the court has discretion to order the Commonwealth to allow a defendant's attorney to inspect, copy, or photograph any evidence identified by the defendant that is material to the defense and where disclosure is in the interest of justice. The comment then clarifies that this rule applies "only to court cases." By comparison, the comment notes that *Brady* applies "to all cases, including court cases and summary cases." Pa. R.Crim.P. 573 cmt. The comment says nothing about PCRA discovery, much less an entitlement to discovery, or even about the scope of discovery in instances where *Brady* controls. The comment merely adverts to pre-trial *Brady* obligations in both summary and court cases, in a rule devoted to court cases. The comment does not address, much less alter the controlling Rule 902(E)(2) parameters for, discovery in collateral attacks brought under the PCRA.

Thus, although the Commonwealth has a continuing duty to disclose exculpatory evidence it discovers, appellee's right to PCRA discovery is governed by Rule 902(E)(2), not by *Brady.* This is not to say that a *Brady* claim raised on PCRA review may never warrant some form of discovery. *See Williams, supra.* A sufficient, specific PCRA factual proffer may be made and credited by the PCRA judge so as to, for example, convince the judge that the Commonwealth has not been candid about the content of its files, so that inspection, whether *in camera* or by the defense, is warranted. But, the mere

fact that a claim sounds in *Brady* does not, on its own, create a special right to PCRA discovery.

Notably, this Court has viewed overly broad discovery requests under Rule 902(E)(2) with suspicion. A general claim of necessity is insufficient. Instead, discovery requests in the PCRA setting must be accompanied by an explanation why the exculpatory information was unavailable to prior counsel and must identify specific documents or items that were not disclosed pre-trial or during the trial proceedings. *Williams*, 732 A.2d at 1175; *Commonwealth v. Carson*, 913 A.2d at 261 ("[A] PCRA petitioner is not entitled to discovery where he has not shown the existence of requested documents, as speculation that requested documents will uncover exculpatory evidence does not satisfy the requirements of Rule 902(E)(2).") (citations omitted).

In this case, appellee's discovery request was based on the trial prosecutor's PCRA hearing testimony that some of the witnesses' accounts became more detailed as they became more comfortable with her when preparing for trial. N.T., 3/24/11, at 85, 86–87 (ADA Dantos's testimony regarding Luis Avila); *id.* at 100 (ADA Dantos's testimony noting that Ralph Logan's statements changed regarding whether he hit victim with butt of his gun). Appellee complained in his renewed discovery request that he did not receive any of the trial prosecutor's notes or "any other documents" respecting the changes in testimony or admission of former lies or inaccuracies. Appellee then speculated that the prosecutor likely possessed notes of these inaccuracies and he requested access to the notes on this basis.

However, the trial prosecutor did not specifically recall whether she had made any notes related to the witnesses' interviews as she prepared for trial, testifying instead that she did not record any of the specific differences in the witnesses' statements. *See* N.T., 3/24/11, at 99–100 (testimony that trial prosecutor "did not record" differences in statements made by witness Luis Avila); *id.* at 100 (trial prosecutor stated that she "did not record any statements from any of the witnesses, no.

Whether or not it was in my notes to ask him questions about what happened at the scene, I would imagine I had some note about questioning [Logan] in that area.").

During the June 6, 2011 hearing on the Commonwealth's request for reconsideration of the discovery order, the Commonwealth acknowledged that there were likely notes made in preparation of cross-examination and direct-examination of witnesses, but insisted that the notes were protected by work product. With this factual background, the PCRA court summarily announced that it was not persuaded by the Commonwealth's position. In the court's view:

> [T]here was ample testimony about these notes, and that they may, in some way, be probative, but the underlying feeling of the Court was that the information that was of primary import was unrefuted testimony with regard to this particular defendant, and I'm concerned with whether or not there may be something that may be of value, which may be exculpatory, but it may not be. But I guess if counsel wants to take the time to go through it—I'll deny the motion for reconsideration, and I'll stand by the order that's presently in place.

N.T., 6/6/11, at 218.

The above quotation is the entirety of the PCRA court's stated rationale for ordering the Commonwealth to turn over its trial notes respecting the four witnesses; moreover, as noted, the PCRA court did not favor this Court with a written opinion to supplement its brief record statement of the reasons for its decision. The difficulty with the PCRA court's reasoning is readily apparent. The court did not discuss the good cause standard governing exceptions to Rule 902(E)'s general proscription against PCRA discovery. Nor did the court address the work product doctrine, and explain why appellee's proffer required that the privilege be defeated. The court also displayed little awareness of the relevant differences between mere notes and verbatim (and exculpatory) statements of witnesses.

Furthermore, the court never addressed the trial prosecutor's repeated assurances that she did not take notes of the pre-trial interviews with the witnesses and that there was nothing exculpatory in the files. N.T., 3/24/11, at 72 (trial prosecutor Dantos testifying that she was "comfortable that all discovery had been provided"); *id.* at 187 (trial prosecutor stating on cross-examination that she had turned over anything that was material or exculpatory). This is significant because the law in this area is clear that the Commonwealth is the first judge of what information must be disclosed. *Ritchie, supra; Williams, supra.* In addition, along these lines, the court gave no indication that it found that the trial prosecutor's account was untrue, as appellee now merely alleges, without a record basis.

Finally, the statement of rationale by the PCRA court was interlaced with equivocation, betraying a failure to recognize the burden on appellee to prove good cause so as to overcome the privilege. The PCRA court appears to have ordered access to the notes, and destruction of a salutary privilege (one which benefits both sides in litigation) based on a purely speculative claim that there might be "something" exculpatory to be found in them. This reasoning is akin to allowing a fishing expedition, reasoning that we have rejected on prior occasions, *see, e.g., Carson,* 913 A.2d at 261, and reasoning that is particularly problematic where, as here, the discovery order fails to address the fact that protected work product material is at issue. PCRA discovery orders of this nature must be supported by a more careful and sensitive analysis. A capital PCRA discovery order supported by nothing more than speculation—that there could "possibly" be something exculpatory contained in the material—does not meet the good cause threshold under Rule 902(E)(2).[10]

10. It is also worth noting that appellee does not explain why the alleged *Brady* violations were not raised at trial and on direct appeal. In his Renewed Request for Discovery, appellee stated that testimony at trial by the cooperating witnesses reflected changes between the statements they initially gave to law enforcement and their trial testimony. As the Commonwealth points out, appellee cross-examined the witnesses about these inconsistencies at trial. To the extent that appellee's discovery argument is premised upon his speculation that the Common-

Accordingly, we hold that the PCRA court abused its discretion in ordering disclosure of the trial prosecutor's notes regarding "interviews, witness preparation sessions, [and] witness examination outlines" for witnesses Peterson, French, Logan, and Avila.

## IV. Mandate

The PCRA court's discovery order is an appealable collateral order pursuant to Appellate Rule 313. The PCRA court abused its discretion because the discovery order is unsupported by the good cause required by Rule 902(E)(2). Accordingly, we vacate the discovery order and remand the matter for a final resolution of appellee's PCRA petition, including the question of the propriety of the role of the FCDO as standby counsel. *See supra* note 2 ("Since the PCRA petition remains pending, however, and since the source of the FCDO's authority to conduct proceedings in state court is not apparent, upon remand, the PCRA court should resolve the question of the propriety of the FCDO's participation. *See Commonwealth v. Wright,* 621 Pa. 446, 78 A.3d 1070, 1086–87 & n. 18 (2013) (collecting cases).").

Jurisdiction is relinquished.

Justices SAYLOR, EAKIN, BAER, McCAFFERY and STEVENS join the opinion.

Justice SAYLOR files a concurring opinion.

Justice TODD files a dissenting opinion.

### *CONCURRING OPINION*

Justice SAYLOR.

I join the majority opinion but have some reservations about the majority's treatment of the collateral order issue. After *Commonwealth v. Harris,* 612 Pa. 576, 32 A.3d 243 (2011), I

wealth must have withheld pre-trial corroboration of the inconsistencies revealed at trial, his *Brady* claim ripened then. *See, e.g., Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125, 1146–47 (2009) (*Brady* claim can be waived for failure to raise at earliest point of proceedings).

had thought that orders requiring disclosure over and against the assertion of a privilege would be appealable as of right, without the necessity of episodic review of each of the requirements of the collateral order doctrine. While I appreciate the majority's apparent concern that some appeals may be frivolous, *see* Majority Opinion, at 422 n. 4, 86 A.3d at 780–81 n. 4, there are conventional remedies in place to address such scenarios. *See* Pa.R.A.P. 2744 (prescribing that appellate courts may award damages as costs when confronted with frivolous appeals). Moreover, since the threshold inquiry as to the validity of the assertion of a privilege closely overlaps with the ultimate merits assessment, I am not certain that there is a net benefit to be gained by tempering the categorical approach to this particular application of the collateral order doctrine.

## DISSENTING OPINION

Justice TODD.

While I agree with much of the Majority Opinion, I cannot join the majority's determination that good cause did not exist for discovery under the circumstances in this matter because the majority does not analyze whether our Court has jurisdiction over the good cause issue under the collateral order doctrine. Further, in this capital appeal, in which Appellee's conviction was based largely upon the testimony of his co-conspirators, the Post Conviction Relief Act ("PCRA") court failed to set forth any meaningful analysis of the good cause standard for discovery, the work-product doctrine, the circumstances in this matter that led to its conclusion that the good cause requirement was met, or why the work product doctrine did not protect the Commonwealth from discovery. Thus, even assuming it is appropriate for our Court to reach the good cause issue, rather than reaching the merits (a conclusion I do not embrace), I would remand the matter to the PCRA court for the drafting of an opinion explaining the relevant standards of good cause, work product, the respective burdens of proof, and an analysis of the application of these standards to the circumstances of this matter. In my view, it is only with a meaningful explanation of the lower tribunal's rationale

that we may properly evaluate the PCRA court's determination under the deferential abuse of discretion standard for appellate review that is to be applied to discovery and privilege determinations. Furthermore, consistent with my approach regarding the Federal Community Defender's Office ("FCDO"), I dissent to the majority's *sua sponte* mandate to remand to the PCRA court the question of the role of the FCDO as standby counsel. My reasoning follows.

Initially, while I agree that our Court has jurisdiction over the work product privilege issue, I, like Justice Saylor, question the necessity of an analysis of the requirements of the collateral order doctrine with respect to privileged material after our decision in *Commonwealth v. Harris*, 612 Pa. 576, 32 A.3d 243 (Pa.2011). However, even if our Court desires to require our judges to engage in this analysis for purposes of privilege assertion, I believe the majority has unwittingly and improperly injected concepts of good cause for discovery into its work product analysis. This, in my view, is contrary to the proper approach under the collateral order doctrine and this Court's case law, undercuts the validity of the majority's analysis as it stands, and will only lead to confusion for the bench and bar.

Specifically, before us are two distinct legal challenges to Appellee's motion for discovery. The first is an assertion by the Commonwealth that there was not good cause to justify the discovery order under Pa.R.Crim.P. 902(E)(2). The second separate challenge is that, even if good cause exists for discovery, certain of the Commonwealth's material is covered by the work product doctrine, and, thus, is protected from discovery.

In addressing the threshold jurisdictional question, the majority properly notes how limited the exceptions are to the otherwise broad requirement of a final order before appellate review is permitted, and that the collateral order doctrine must be narrowly construed. Consistent with this overall approach of construing the collateral order doctrine narrowly, the appellate courts must, however, separate those aspects of multifaceted orders that are collateral from those aspects that

are not collateral, and courts should review only those legal issues that meet the collateral order test. Thus, as our Court recently, and unanimously, held, "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to [Pa.R.Crim.P.] 313." *Rae v. Pa. Funeral Directors Assoc.*, 602 Pa. 65, 977 A.2d 1121, 1130 (Pa.2009); *see also Barley v. Consolidated Rail Corp.*, 820 A.2d 740, 742–43 (Pa.Super.2003) (finding two rulings within order did not satisfy collateral order test, that a third ruling was based on a record insufficient to determine whether the test was met, and that a fourth ruling within the order met the test); G. Ronald Darlington, et al., Pennsylvania Appellate Practice, § 313:2, at 3–187 (2d ed. 2004). Thus, when addressing a multi-issue order, our Court has applied Rule 313 issue-by-issue.

Here, however, the majority does not separately analyze the distinct aspects of the discovery order at issue: (1) whether there was good cause for discovery under Pa.R.Crim.P. 902(E)(2); and (2) whether certain of the Commonwealth's material is covered by the work product doctrine. While the majority analyzes the Commonwealth's assertion of the work product doctrine under all three prongs of the collateral order test, it does not do so with respect to the Commonwealth's challenge to the good cause determination. While it is true that there must be good cause for discovery under Pa. R.Crim.P. 902(E)(2), our case law makes clear that this question is separate from, and cannot serve as part of, the analysis regarding our Court's jurisdiction for immediate appeal of the work product privilege issue.

Indeed, the majority opinion could be erroneously interpreted to suggest that a mere allegation of the absence of good cause for discovery is also immediately appealable under the collateral order doctrine. Again, consistent with the narrow nature of the collateral order doctrine, the majority, having reviewed the work product determination under the collateral order doctrine to determine whether we have jurisdiction, was limited to addressing that issue on the merits. Whether the

good cause for discovery issue meets the collateral order doctrine is a separate question, and the majority does not apply all three prongs of the collateral order test to this distinct legal issue.[1] Declining to engage in an analysis of whether the good cause issue meets the jurisdictional three-prong collateral order test, the majority proceeds to resolve the appeal on an issue that has not satisfied the jurisdictional test, in direct contravention of our case law. *See Rae.*

Further, the majority improperly engrafts the concept of whether there was good cause for discovery into the jurisdictional calculus for the assertion of the work product privilege. Majority Opinion at 422–23, 86 A.3d at 781–82. By injecting into the work product jurisdictional analysis the question of whether good cause is shown, the majority, in my view, fatally undercuts its assertion under the first prong of the collateral order doctrine that the question on which collateral review is based is truly distinct from the merits of the underlying *Brady* claim,[2] which is one of the principal issues being litigated in Appellee's PCRA petition; it also seemingly undermines the second prong that the claim must implicate interests deeply rooted in public policy important to individuals other than those involved in the case.

A demonstration of good cause, as articulated by the majority, requires "an explanation why the exculpatory information was unavailable to prior counsel and must identify specific documents or items that were not disclosed pre-trial or during the trial proceedings." Majority Opinion at 436, 86 A.3d at 789. Yet, such considerations—establishing exculpatory information, justifying the failure to previously obtain the material, and the identification of specific documents—overlap with the merits of the underlying *Brady* claim.[3] Thus, if, as we have

1. Indeed, I believe a significant question exists as to whether the mere determination of good cause for discovery satisfies the exacting requirements of the collateral order doctrine as expressed in Rule 313.

2. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. To establish a *Brady* violation, a petitioner must prove: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice have

held, that every one of the three prongs be "clearly present" before collateral review is allowed, *Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 47 (Pa.2003), and good cause is part of the work product jurisdictional analysis, then it strongly appears the discovery order is **not** "entirely distinct from the merits [of the] *Brady* claim appellee hopes to develop," Majority Opinion at 423, 86 A.3d at 782, and the first prong of the collateral order test regarding jurisdiction based upon work product cannot be satisfied. Similarly, and again, unlike the work product privilege, I question whether the mere determination of good cause for discovery implicates a claim that involves interests deeply rooted in public policy considered too important to be denied review, *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (Pa.1999), and which transcends the immediate parties.

In sum, with respect to the threshold jurisdictional issue, in my view, the majority errs by: (1) in failing to conduct an independent analysis of whether the separate good cause issue meets the jurisdictional three-prong collateral order test; and (2) engrafting the distinct question of good cause for discovery onto the issue of whether the assertion of the work product privilege may be immediately heard on appeal under the collateral order doctrine.

Regardless, even if we could reach the good cause issue, in my view, we should not resolve the question on the merits. As noted by the majority, the PCRA court's explanation for permitting discovery and denying the Commonwealth the protection of the work product doctrine is cursory and divorced from any applicable legal standards. Rather, in light of the circumstances of this appeal, the lack of a meaningful opinion or explanatory order by the PCRA court, and our standard of review in which we consider whether the lower court abused its discretion, I believe the proper disposition should be to remand the matter to the PCRA court for a written opinion detailing its exercise of discretion in determining that discovery was proper and the work product privilege unavailing.

ensued." *Commonwealth v. Spotz*, 616 Pa. 164, 47 A.3d 63, 84 (Pa. 2012).

Generally speaking, the purpose of discovery is, ultimately, to allow a fair trial on the merits. *Lomish v. Morris Nimelstein Sportswear Co., Inc.*, 367 Pa. 393, 80 A.2d 805, 807 (Pa.1951) ("Discovery ... having a salutary effect upon the administration of justice in that it enables parties litigant to secure facts which would otherwise be denied them and thus constitutes a useful and practical implement in the search for and the presentation of truth"). In my mind, this goal reasonably applies to both pre-trial and post-trial discovery. While, under the PCRA, the default is to prohibit discovery, discovery is nonetheless permitted upon the moving party establishing "good cause." Pa.R.Crim.P. 902(E)(2). Related thereto, there is a continuing duty to disclose exculpatory material pursuant to *Brady*. Further, the present matter involves a death sentence based on a conviction grounded largely on the testimony of Appellee's co-conspirators, and, thus, Appellee's allegations regarding a change in testimony by Commonwealth witnesses which allegedly was not disclosed to defense counsel have added importance. As noted by the majority, however, the PCRA court's three-sentence explanation permitting discovery is devoid of analysis, including any consideration of the applicable legal standards. Thus, the PCRA court has failed to supply this Court with an analysis of the good cause standard, the work-product doctrine, proper burdens of proof, or a meaningful application of these standards to the circumstances in this matter that led to the court's conclusion that good cause was met and the work product doctrine did not protect the Commonwealth from discovery.

Yet, for appellate review, an explication of the lower tribunal's rationale is essential, as decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339, 353 (2013). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." *Commonwealth v. Selenski*, 606 Pa. 51, 994 A.2d 1083, 1087 (Pa.2010). Further, an abuse of

discretion may not be found merely because an appellate court might have reached a different conclusion on the record before it. *Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957, 961 (Pa.2007). Indeed, in light of the absence of a meaningful PCRA court opinion, it appears that the majority has done just this, and rather than review for an abuse of discretion, has improperly engaged in *de novo* review. In my view, it is difficult in the extreme, and certainly imprudent in this capital matter, to analyze whether the PCRA court abused its discretion in these circumstances without an understanding of its rationale. Thus, I would remand this matter to the PCRA court for the drafting of an opinion explaining the basis for its discovery determinations. Only then will we be in a proper position to review the exercise of its discretion.

Finally, consistent with my prior position in this area, that any impropriety in the FCDO's participation in state court matters should be dealt with in the normal course of disciplinary proceedings, I respectfully dissent from the majority's *sua sponte* directive to the PCRA court to resolve on remand the propriety of the FCDO's participation in state court proceedings. *See Commonwealth v. Wright,* 621 Pa. 446, 78 A.3d 1070 (2013) (Todd, J. concurring and dissenting). Notably, the Commonwealth, although identifying the potential issue, does not request any action on our part.

For all of these reasons, I must respectfully dissent.