J-A15033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON WINIG | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JESSICA BRAVERMAN AND HELEN BRAVERMAN | : | No. 2039 EDA 2020 |
| _____ | : | |
| JESSICA BRAVERMAN | : | |
| v. | : | |
| | : | |
| JASON WINIG | : | |
| Appellant | | |

Appeal from the Order Entered October 1, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190607063,
No. 191102715

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                Filed: November 5, 2021

Jason Winig ("Winig") appeals from the October 1, 2020, Order ("the Discovery Order"), which granted in part and denied in part a Motion to deem requested admissions admitted and to compel full and complete responses to interrogatories and document requests ("the Motion to Compel").  The proponent of the Motion to Compel, Appellee Jessica Braverman ("Braverman"), has filed a Motion to Quash Winig's appeal of the Discovery

Order as interlocutory. We grant Braverman's Motion and quash the appeal as interlocutory.

Braverman and Winig were married in 2011 and divorced in 2019. Braverman and Winig are parties in ongoing, contentious litigation. In **Braverman v. Winig**, Case No. 19060763 (Phila. C.C.P.) ("the Braverman Action"), plaintiff Braverman filed a tort action against Winig for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress and false imprisonment. In her Complaint, Braverman set forth quoted statements from Winig, which she had recorded during Winig's alleged abusive behavior. Winig filed an Answer and New Matter, and an Amended Answer and New Matter, denying the allegations.

Thereafter, Winig filed his own Complaint against Braverman. In **Winig v. Braverman**, Case No. 191102715 (Phila. C.C.P.) ("the Winig Action"), Winig averred, *inter alia*, that Braverman and her mother, Helen Braverman, Esquire ("Ms. Braverman"), had conspired to record and disseminate conversations with Winig, in violation of Pennsylvania's Wiretapping and

Electronic Surveillance Control Act ("the Wiretap Act").[1,2]  On January 31, 2020, the trial court consolidated the Braverman Action and the Winig Action.

In April 2020, during discovery, Braverman served Winig with a Request for Admissions.  Specifically, Braverman asked Winig to admit that each quote, set forth in her Complaint, "contains a verbatim quote of statements [Winig] made."  **See** Motion to Deem Request for Admissions Admitted (Braverman Action) ("the Motion to Compel"), 5/21/20, Exhibit "A," ¶¶ 1-32.   Winig objected to the Request for Admissions, but additionally responded that he could not give a verbatim account of his statements during any of the parties' arguments.  **See id.**, Exhibit "K."

On May 21, 2020, Braverman filed the Motion to Compel, requesting that the trial court deem as admitted her requested admissions related to the recordings and to compel Winig to respond.  **See** Motion to Compel, 5/21/20.

---

[1] **See** 18 Pa.C.S.A. §§ 5701-5782.

[2] Section 5725 of the Wiretap Act provides, in relevant part, that

> [a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have  a civil cause  of  action  against  any  person  who intercepts, discloses or uses  or  procures  any  other  person  to intercept, disclose or use, such communication….

18 Pa.C.S.A. § 5725(a) (emphasis added).

On September 29, 2020, the trial court conducted a hearing on the Motion to Compel and other discovery matters.[3]

On October 1, 2020, the trial court entered an Order granting in part and denying in part the Motion to Compel. Discovery Order, 10/1/20. The trial court directed, in part, the following:

> [] Winig shall provide full and complete answers to Requests for Admissions 1-32[4] …. In particular, [] Winig's objection that the [Wiretap Act] … precludes a substantive response to the requests is OVERRULED. His amended responses shall fairly meet the substance of each request. Further, [Winig] may only give lack of information or knowledge as a failure to admit or deny any request after he has made reasonable inquiry, including reviewing information readily obtainable by him, including any recordings of his interactions with [] Braverman in his counsel's possession, custody, or control.

Trial Court Order, 9/30/20 (footnote added). The next day, Winig filed a Motion to certify the October 1, 2020, Discovery Order for an interlocutory appeal, which the trial court denied. Notwithstanding, Winig filed the instant timely appeal.

Winig presents the following claims for our review:

1. Is the trial court's September 30, 2020, Order an appealable collateral [O]rder?

---

[3] Interestingly, on September 10, 2020, Winig filed a Praecipe withdrawing his claims under the Wiretap Act with regard to the unlawful *creation* of the recordings. Praecipe, 9/10/20. Thus, the alleged unlawful *disclosure* of the recordings is now the focus of Winig's action.

[4] In her Request for Admissions, paragraphs 1-32, Braverman asked Winig to confirm quotes from the audio recording.

2. Did the trial court err in holding that the use and disclosure provisions of [the Wiretap Act] … were not a bar to compelling [] Winig, who is an "aggrieved person" as that term is defined by 18 Pa.C.S.[A. §] 5721.1, to use the content of oral communications to respond to [the Motion to Compel] and other discovery requests in this civil action?

3. Did the trial court err in compelling [] Winig to use the contents of audio recordings made by [] Braverman of his oral communications to answer Requests for Admission[s] without first holding an evidentiary hearing to determine whether (a) [] Winig had ever given prior express consent to the interceptions[;] or (b) whether [] Braverman met her burden of proving the interceptions were made lawfully pursuant to the "crime-victim" exception to the [Wiretap] Act's blanket prohibitions against interceptions of oral communications[;] or (c) if so, whether an exception, not apparent in the text of the [Wiretap] Act's prohibition against use and disclosures permits use of the contents of audio recordings of oral communications in civil proceeding[s?]

Brief for Appellant at 2.

Initially, we address Braverman's Motion to Quash Winig's appeal, as it implicates our jurisdiction. *See Jacksonian v. Temple Univ. Health Sys. Found.*, 862 A.2d 1275, 1279 (Pa. Super. 2004) (recognizing that "the question of appealability implicates the jurisdiction of our [C]ourt."). Braverman asserts that the trial court's Discovery Order is not appealable as a collateral order. Motion to Quash, 1/18/20, at 9. Specifically, Braverman asserts that (a) the issues raised by Winig on appeal are central to the underlying litigation between the parties; (b) the Discovery Order does not implicate a right that requires immediate review; and (c) Winig's claimed privacy interest will not be irreparably lost if review waits until a final order. *See id.* at 10, 11, 12.

- 5 -

Relatedly, in his first claim, Winig asserts that the trial court's Discovery Order is appealable as a collateral order. Brief for Appellant at 10. Winig asserts that the Braverman Action, which alleges common law tort claims, is based upon Braverman's personal knowledge and information, and not the content of the recordings. *Id.* at 13. Winig asserts that none of Braverman's claims require, as an element of proof, the contents of the audio recordings. *Id.* According to Winig, "whether [] Braverman has any justification for having made these uses and disclosures [of the recordings] … does not depend upon nor require proof of the contents of the audio recordings, but rather hinges solely upon the statutory language of the Act's prohibitions and exceptions." *Id.* at 14.

Winig argues that, although the Wiretap Act permits a crime victim to intercept a communication otherwise prohibited by the Act, it does not authorize any uses or disclosures of that information. *Id.* According to Winig, the claims in the Winig Action

> do not depend upon or require proof of the contents of the audio recordings. This is so because [] Braverman has already admitted (1) the fact of the interceptions and (2) that she used and disclosed the content of the audio recordings in pleadings she has filed in these consolidated cases as well as having made various other use and disclosures of the audiotapes not permitted by the [Wiretap] Act.

*Id.* at 13-14 (emphasis omitted). Thus, Winig claims that the *content* of the audio recordings is irrelevant to his Wiretap Act claim, rendering them

"entirely separable from the discovery issue decided by the court's [O]rder of September 30, 2020." *Id.* at 15-16.

Generally speaking, an appellate court's jurisdiction extends only to review of final orders. *See* Pa.R.A.P. 341 (stating that "an appeal may be taken as of right from any final order."). However, where an order satisfies the three-pronged test set forth in Pa.R.C.P. 313 (referring to collateral orders), an appellate court may exercise jurisdiction, even though the order is not final. *Shearer v. Hafer*, 177 A.3d 850, 857 (Pa. 2018).

Pennsylvania Rule of Appellate Procedure 313 defines a "collateral order" as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Thus, for an order to be appealable under Rule 313(b), the following three conditions must be satisfied: "(1) [T]he order is separable from the main cause of action; (2) the right involved is too important to be denied review; and (3) the claim would be irreparably lost if review is postponed." *In re Estate of McAleer*, 248 A.3d 416, 421-22 (Pa. 2021) (citation omitted). "Whether an order is appealable under the collateral order doctrine under Pa.R.A.P. 313 is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary." *Id.* at 855.

In reviewing the appealability of the Discovery Order, we first focus our attention on whether the Discovery Order is separable from the main cause of action. ***See generally*** Pa.R.A.P. 313; ***McAleer***, ***supra***. "An order is **separable** from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute." ***Commonwealth v. Williams***, 86 A.3d 771, 781 (Pa. 2014) (emphasis added). Because "some interrelatedness with the main issue is tolerable," ***id.***, a court must assess whether an issue "is conceptually distinct" from the primary cause of action. ***Pridgen v. Parker Hannifin Corp.***, 905 A.2d 422, 433 (Pa. 2006) (citation omitted). We have described our "approach when reviewing separability" as a "practical" one. ***Williams***, 86 A.3d at 781.

In determining whether the Discovery Order is separable from the main cause of action, we are required to interpret provisions of the Wiretap Act. As this Court has explained, when interpreting a statute, the object of construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The plain language of a statute is the best indicator of such intent. 1 Pa.C.S.A. § 1921(b). However, when ascertaining the intent of the General Assembly, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S.A. § 1922(1). Further, "every statute shall be construed, if possible, to give effect to all of its provisions so that no provision

is mere surplusage." ***Linkosky v. DOT, Bureau of Driver Licensing***, 247 A.3d 1019, 1026 (Pa. 2021).

The Winig Action avers a violation of the Wiretap Act. In general, the Wiretap Act "prohibits the interception, disclosure or use of any wire, electronic or oral communication." ***Commonwealth v. Deck***, 954 A.2d 603, 607 (Pa. Super. 2008). However, section 5704 of the Wiretap Act expressly provides that it is *not* unlawful for

> [a]ny victim … to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception….

18 Pa.C.S.A. § 5704(17).

Our review discloses that, in her Complaint ("the Braverman Complaint"), Braverman averred causes of action based upon Winig's alleged verbal and physical abuse of her throughout their marriage. ***See***, ***e.g.***, Braverman Complaint at ¶ 6 (stating that "[t]his action involves physical, mental, and sexual abuse committed against [Braverman] by [Winig] over a roughly ten-year period …."). To support her causes of action in tort, Braverman averred various quotes from Winig, which she had recorded. ***See***, ***e.g.***, ***id.*** at ¶¶ 41-46 (wherein Braverman described Winig returning home intoxicated one night, kicking a bathroom door open and throwing Braverman out of the bathroom while yelling, "You don't fucking kick me out of my own bathroom. You don't make the rules. I will do as I choose."), 61-62 (wherein

- 9 -

Braverman described an incident in 2011, wherein Winig struck Braverman in the collarbone, face and nose with his keys, and told Braverman, "I swear to god, [Braverman], I want to punch you in your fucking teeth right now."), 104 (wherein Winig purportedly threatened Braverman by stating, "I'll fucking knock your fucking teeth out if you try to fucking control me.").

In his Amended Answer to the Braverman Complaint, Winig denied the averments. *See* Amended Answer to Braverman Complaint, 11/20/19, ¶¶ 41-46 (wherein Winig denied the averments and demanded strict proof of the allegations at trial), 61-62 (same), 104 (wherein Winig admitted that the couple had argued, but denied the remaining portion of the allegation demanding strict proof of the allegation at trial). In his New Matter to the Braverman Complaint, Winig alleged that Braverman's claims "are barred by [Braverman's] own criminal actions." New Matter to Braverman Complaint, 11/20/19, ¶ 4. Winig further claimed that Braverman's actions are barred by "violations of state and federal law." *Id.*, ¶ 11.

Significantly, on January 7, 2020, Winig filed an Amended Complaint in the Winig Action ("the Winig Complaint"). In the Winig Complaint, Winig averred that, by November 26, 2017, Braverman "had already been surreptitiously taping her private conversations with her husband, [] Winig …, for at least six of the seven years of their marriage." Amended Complaint (Winig Action), 1/7/20, at 4. Based upon these recordings, Winig asserted a cause of action against Braverman and Ms. Braverman for violating the

- 10 -

Wiretap Act. **Id.** at 17. Winig averred, in part, that Braverman had unlawfully **disclosed** her recorded oral communications with Winig to others, including her prior counsel. **Id.** at 19 (¶¶ 98-99). Winig alleged that, on each occasion that Braverman had recorded Winig, Braverman violated the Wiretap Act. **Id.** (¶ 97). Based upon these violations of the Wiretap Act, Winig sought "actual damages, punitive damages and reasonable attorney's fees and litigation costs …." **Id.** at 22.

In his appeal, Winig interprets section 5704(17) as allowing for the "interception" of such communications, not their disclosure. Brief for Appellant at 14. Because the Winig Complaint is based upon unlawful "disclosure" of the communications, he argues that Braverman's status as a victim under that section is irrelevant. **See id.**

With this in mind, we conclude that the Discovery Order is not separable from the causes of action. The contents of the recordings, which are at issue in the Motion to Compel and the Discovery Order, are necessary to a determination of Winig's claim of a Wiretap Act violation. Simply put, the contents are required to establish whether the recordings fall within the crime victim exception set forth at section 5704(17). **See id.** Thus, the issues raised in this appeal are not "conceptually distinct" from the primary causes of action. **See Pridgen**, 905 A.2d at 433.

Because the Discovery Order is not separable from the primary causes of action, it is not appealable as a collateral under the Rules of Appellate

Procedure. **See** Pa.R.A.P. 313 (defining collateral orders), 341 (defining final orders, generally).

Applications denied as moot. Motion to quash granted. Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/21

**COURT OF COMMON PLEAS OF PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION-CIVIL**

| | | |
|---|---|---|
| JASON WINIG, *Plaintiff,* | : : : | Case No. 191102715 |
| v. | : : : | 2039 EDA 2020 |
| JESSICA BRAVERMAN, et al. *Defendant.* | : | |

## OPINION

On appeal is this Court's order granting in part a motion by appellee Jessica Braverman to deem requests for admission as admitted. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the Court sets out its reasoning below.

## FACTS

Plaintiff Jason Winig commenced this civil action (the "Winig Action," Case No. 191102715 (Phila. C.C.P.)) against his ex-wife, Jessica Braverman and her mother, Helen Braverman, to recover damages for their alleged violations of the Pennsylvania Wiretap Act, 18 Pa. C. S. A. §5701 *et seq.*, among other claims. (Winig Amended Complaint, Trial Court Docket ("Dkt.") 191102715 at 1/7/2020). Mr. Winig alleges that his wife "secretly recorded private conversations" with him, and unlawfully used these recordings ("the Recordings") in a criminal prosecution and child custody proceedings. (*Id.* at ¶¶ 82-101) Mr. Winig further alleges that Ms. Braverman wrongfully used the Recordings in a civil action currently before this Court, in which Ms. Braverman seeks damages for assault, battery, and intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment (the "Braverman Action," Case No. 190607063 (Phila. C.C.P.)); Braverman Complaint, Dkt. 190607063 at

Winig Vs Braverman Etal-OPFLD



19110271500311

11/1/2020). On January 31, 2020, the Winig Action was consolidated with the Braverman Action, with the Winig Action being lead. (Order, Dkt. 191102715 at 1/31/2020).

The complaint in the Braverman Action includes quotations of Mr. Winig insulting and threatening Ms. Braverman, which allegedly were taken from the Recordings. (*See, e.g.* Braverman Complaint at ¶¶ 27, 94, 95). On April 10, 2020, Ms. Braverman served Mr. Winig with requests for admission that the quotations in the Braverman complaint were "verbatim quotes of statements [Mr. Winig] made." (Braverman Request for Admission, attached as Ex. A to Braverman Motion to Deem Requests for Admission Admitted, Dkt. 191102715 at 5/21/2020, ¶¶ 1-32). Mr. Winig objected to all these requests on grounds that they "rely on contents of communications recorded in violation of the Pennsylvania Wiretap Act, which content may not be used, disclosed or disseminated in any civil action. See 18 Pa. C. S. A. §5701 et seq." (Winig Response to Requests for Admission, attached as Ex. D to Braverman Motion to Deem Requests for Admission Admitted, ¶¶ 1-32). Mr. Winig then served an amended answer to Ms. Braverman's requests for admission. (Amended Response to Requests for Admission, attached as Ex. H to Braverman Motion to Deem Requests for Admission Admitted). In the amended response, Mr. Winig maintained his objections based on the Pennsylvania Wiretap Act, adding "[b]y way of further response, I am unable to give a verbatim account of what I may have said during any of the arguments I had with [Ms. Braverman]." (*Id.* at ¶¶ 1-32). Ms. Braverman's counsel responded with a letter to Mr. Winig's counsel, stating that Mr. Winig's amended response was inadequate because "[Mr.] Winig is in possession of the Recordings of his statements. [Mr.] Winig thus can provide a verbatim account of what he said in those arguments captured by the Recordings and his responses to Requests for Admission Nos. 1-32 are false." (Letter, attached as Ex. J to Braverman Motion to Deem Requests for Admission Admitted).

On June 8, 2020, Ms. Braverman filed a motion to deem her requests for admission regarding the Recordings as admitted ("Braverman Motion to Deem Requests Admitted"). (*See* Dkt. 191102715 at 5/21/2020, ¶¶ 16-24). On September 29, 2020, the Court held a hearing on Ms. Braverman's motion, among other discovery motions related to the Recordings. (Notes of Testimony (N.T.), 9/29/2020). At the hearing, neither party presented testimony. (*Id.*) On September 30, 2020, the Court granted Ms. Braverman's motion in part, ordering Mr. Winig to respond to Ms. Braverman's requests for admission regarding the alleged quotations in the Braverman complaint, and overruling Mr. Winig's objections based on the Pennsylvania Wiretap Act. (Order, Dkt. 191102715 at 9/30/2020). The Court's order states:

> [Mr. Winig] may only give lack of information or knowledge as a failure to admit or deny any request after he has made reasonable inquiry, including reviewing information readily obtainable by him, including any recordings of his interactions with Jessica Braverman in his counsel's possession, custody, or control.

(*Id.*)

On October 21, 2020, Mr. Winig filed a motion to certify an interlocutory appeal of the Court's September 30, 2020 order. (Motion, Dkt. 191102715 at 10/21/2020). The Court denied this motion. (Order, Dkt. 191102715 at 10/23/2020). Mr. Winig then took an appeal from the Court's September 30, 2020 order. (Notice of Appeal, Dkt. 191102715 at 10/21/2020).

## STANDARD OF REVIEW

An appellate court reviewing a trial court discovery order applies the abuse of discretion standard. *Bensinger v. U. of Pittsburgh Med. Ctr.*, 98 A.3d 672, 682 (Pa. Super. 2014).

## DISCUSSION

### I.     The Order Granting Ms. Braverman's Discovery Motion Is Not an Appealable Order

Under Pennsylvania law, "an appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313)." *Stahl v. Redcay*, 897 A.2d 478, 485 (Pa. Super. 2006). The Court's September 30 order granting in part Ms. Braverman's Motion to Deem Requests Admitted is not a final order pursuant to Pennsylvania Rule of Appellate Procedure 341, because it does not dispose of any of the parties' claims. Pa.R.A.P. 341(b). Nor is it an interlocutory order as of right under Rule 311, because none of the exceptions listed in that rule apply. Pa.R.A.P. 311(a).

Moreover, permission to appeal this interlocutory order is unwarranted in this case. An interlocutory order may be appealed by permission if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and [...] an immediate appeal from the order may materially advance the ultimate termination of the matter." 42 Pa. Cons. Stat. § 702 (West, Westlaw through 2020 Regular Session Act 95). As will be discussed in more detail below, Mr. Winig's claim that the Pennsylvania Wiretap Act protects him from responding to Ms. Braverman's requests for admission lacks merit.

Finally, the Court's September 30, 2020 order is not a collateral order under Pennsylvania Rule of Appellate Procedure 313. "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313. "An issue is separable if it can be

4

examined without analysis of the claims presented in the underlying litigation." *A.A. v. Glicken*, 237 A.3d 1165, 1169 (Pa. Super. 2020).

Mr. Winig's appeal does not involve issues that are "separable from and collateral to the main cause of action." Pa.R.A.P. 313. To the contrary, this appeal involves issues that are central to Mr. Winig's case. The theory of Mr. Winig's claim against Ms. Braverman is that she violated the Pennsylvania Wiretap Act by secretly recording conversations with him. (*See* Winig Amended Complaint). Similarly, in the motion before this Court, Mr. Winig argues that he has no obligation to respond to Ms. Braverman's requests for admission because they "rely on contents of communications recorded in violation of the Pennsylvania Wiretap Act, which content may not be used, disclosed or disseminated in any civil action." (Winig Response to Requests for Admission, ¶¶ 1-32; Statement of Matters Complained of on Appeal, Dkt. 191102715 at 11/9/2020). Through his appeal, Mr. Winig is therefore asking the Court to analyze whether Ms. Braverman violated the Pennsylvania Wiretap Act, the very issue that will ultimately have to be decided in the Winig Action. Therefore, Mr. Winig's appeal is not separable or collateral because Mr. Winig's objection cannot be "examined without analysis of the claims presented in the underlying litigation." *Glicken*, 237 A.3d at 1169.

## II.     The Court Did Not Err by Granting Ms. Braverman's Motion To Compel Discovery and Overruling Mr. Winig's Objections

On appeal, Mr. Winig contends that the Pennsylvania Wiretap Act exempts him from responding to Ms. Braverman's requests for admission. (Statement of Matters Complained of on Appeal, Dkt. 191102715 at 11/9/2020). Under the Pennsylvania Rules of Civil Procedure, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Pa.R.C.P. No. 4003.1(a). The relevance standard for discoverability "is necessarily broader than it is for admission at trial." *George v. Schirra*, 814

5

A.2d 202, 205 (Pa. Super. 2002). "If it were not, there would be tremendous potential for relevant information and admissible evidence to be missed by the parties." *Id.* For this reason, "[t]he informational dragnet during discovery is meant to be wider so that all relevant and admissible evidence can be discovered pre-trial." *Id.*

In her Motion to Deem Requests Admitted, Ms. Braverman seeks an admission that the averments in the Braverman complaint were verbatim quotes of statements Mr. Winig had made. (Braverman Requests for Admission, ¶¶ 1-32). Mr. Winig raised no privilege objections to these requests for admission. (Winig Response to Requests for Admission, ¶¶ 1-32). Nor did he object to the requests for admission on relevance grounds. (*Id.*) Moreover, the requests are relevant to the claims in the consolidated Winig and Braverman Actions. Ms. Braverman seeks admissions that Mr. Winig insulted and threatened her, which is relevant to Ms. Braverman's assault and battery claims. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Mr. Winig's admissions that he insulted and threatened Ms. Braverman would tend to prove that any attempt to injure Ms. Braverman was intentional.

Moreover, Ms. Braverman's requests for admission are relevant to her defense against Mr. Winig's Pennsylvania Wiretap Act claim. This statute prohibits the interception and disclosure of oral communications:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
> > (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
> > (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or

6

having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa. Cons. Stat. § 5703 (West, Westlaw through 2020 Regular Session Act 95). The statute also contains a "crime victim" exception, which states:

It shall not be unlawful and no prior court approval shall be required under this chapter for [...] [a]ny victim [...] to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S.A. § 5704(17). The Pennsylvania Wiretap Act creates a civil cause of action for violations of its provisions. 18 Pa.C.S.A. § 5725(a). It also creates a defense on the grounds that the defendant "acted in good faith reliance on a court order or the provisions of this chapter." 18 Pa.C.S.A. § 5725(c).

Ms. Braverman asserts that she made the Recordings "under a reasonable suspicion that Winig was committing, about to commit or had committed a crime of violence and had reason to believe that evidence of the crime of violence might be obtained from the recording." (New Matter, Amended Answer to Winig Complaint, Dkt. 191102715 at 8/4/2020, ¶ 7). Ms. Braverman's requests for admission therefore are relevant to her "crime victim" defense under the Pennsylvania Wiretap Act. If Mr. Winig in fact threatened and insulted Ms. Braverman, this tends to prove that she was under a reasonable suspicion that a crime of violence might be committed. Therefore, Ms. Braverman's requests for admission regarding the Recordings are

7

proper under Pennsylvania Rule of Civil Procedure 4003.1(a) because they involve non-privileged matters that are relevant to the subject matter in the pending actions.

Mr. Winig's contention that the Pennsylvania Wiretap Act bars Ms. Braverman's requests for admission lacks merit. Mr. Winig bases his objections on Sections 5717 and 5721.1 of the Pennsylvania Wiretap Act. (Winig Supplemental Memorandum, Dkt. 191102715 at 9/11/2020, 18-24). These sections, however, do not address whether Ms. Braverman can use the Recordings in civil discovery. Section 5717, entitled "Investigative disclosure or use of contents of wire, electronic or oral communication or derivative evidence," sets out circumstances under which law enforcement officers may disclose evidence protected by the statute. 18 Pa.C.S.A. § 5717(a). It also sets out circumstances under which any person may disclose evidence protected by the statute to law enforcement officers. 18 Pa.C.S.A. § 5717(b), (c). Section 5721.1, entitled "Evidentiary disclosure of contents of intercepted communication or derivative evidence," sets out the circumstances under which wires, electronic or oral communications may be admitted into evidence. 18 Pa.C.S.A. § 5717. These sections of the Pennsylvania Wiretap Act, and the act as whole, are silent on the use of protected recordings in civil discovery.

Moreover, because Section 5721.1 addresses the admissibility of the Recordings, it is not a proper ground for an objection to a discovery motion.[1] Under Pennsylvania Rule of Civil Procedure 4003.1, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. No. 4003.1(b). This rule is in keeping with the

---

[1] Mr. Winig has filed separately a motion in limine to exclude the recordings from these proceedings, which is currently pending before this Court. (Motion in Limine, Dkt. 191102715 at 7/30/2020).

general policy of allowing for a broader scope of discoverability than admissibility. *George*, 814 A.2d at 205.

At this stage, Ms. Braverman's requests for admission are reasonably calculated to lead to the discovery of admissible evidence. As discussed above, Ms. Braverman's requests are relevant to her claims and her "crime victim" defense against Mr. Winig's Wiretap Act claim. While the Court cannot determine the ultimate admissibility of the Recordings at the this stage of the litigation, it finds that, in light of the substance of Ms. Braverman's claims and defenses, there are reasonable grounds to conclude that Ms. Braverman's requests for admission will lead to the discovery of admissible evidence.[2]

## CONCLUSION

For the foregoing reasons, the Court respectfully requests that the Superior Court affirm this Court's order granting in part appellee Jessica Braverman's motion to deem requests for admission as admitted.

**BY THE COURT:**



_____  **J.**

---

[2] To the extent that Mr. Winig seeks to protect his privacy rights, he may do so while still complying with this Court's September 30, 2020 order. Mr. Winig and Ms. Braverman have entered into a confidentiality agreement, under which materials marked as confidential can be filed under seal and thus excluded from public court filings and disclosure to third parties. (N.T. 9/30/2020 at 14:14-15:20). Under this agreement, the parties may comply with the Court's discovery order regarding the Recordings without making the contents of the Recordings public.

9