J-S37010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| IBRAHIM MUHAMMED | : | |
| Appellant | : | No. 406 EDA 2024 |

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004101-2012

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| IBRAHIM MUHAMMED | : | |
| Appellant | : | No. 407 EDA 2024 |

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004103-2012

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| IBRAHIM MUHAMMED | : | |
| Appellant | : | No. 408 EDA 2024 |

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004105-2012

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 26, 2024**

Ibrahim Muhammed appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

We glean the following history from the PCRA court's opinion.  In September 2011, Appellant and his co-defendant, Nalik Scott, murdered three people at Lorena's Grocery while robbing the store, leaving behind two surviving witnesses, Jessica and Laura Nunez.  The following February, Appellant was arrested for selling marijuana and told "police that he had information about robberies and shootings."  PCRA Court Opinion, 4/3/24, at 6.  During the ensuing interview, Appellant incriminated himself in the Lorena's Grocery murders, signing a statement that he had fired a handgun at the victims and naming Scott as his co-conspirator.  Subsequently, one of the survivors identified Appellant from a photo array, and both identified him at trial.  Ultimately, a jury convicted Appellant of conspiracy and three counts each of first-degree murder and robbery, among other crimes.  In December 2016, the trial court imposed three consecutive life sentences followed by fifty to one-hundred years of incarceration.[1]

This Court affirmed the judgment of sentence holding, *inter alia*, that Appellant waived for lack of development a challenge to the court's refusal to

---

[1] The Commonwealth sought the death penalty but the jury was unable to reach a consensus on imposing it.  Also of note, now-District Attorney Lawrence Krasner represented Appellant at trial.  Therefore, the Office of the Attorney General represents the Commonwealth in these PCRA proceedings.

allow him to demonstrate at trial that he did not walk with a similar gait as the person alleged to be him in the surveillance video. *See Commonwealth v. Muhammed*, 219 A.3d 225, 2019 WL 2432100, at *9 (Pa.Super. 2019) (non-precedential decision). Following reinstatement of his direct appeal rights through the PCRA, our Supreme Court denied his *nunc pro tunc* petition for allowance of appeal in 2021. *See Commonwealth v. Muhammed*, 244 A.3d 452 (Pa. 2021).

Appellant *pro se* timely initiated the instant proceedings in March 2022. The court appointed counsel, who filed a motion to obtain the discovery materials in the case and a supplemental motion seeking the complete homicide file to assist in pleading claims related to the misconduct of former Philadelphia police detective Philip Nordo.[2] The PCRA court directed the Commonwealth to provide any information from the file that concerned Nordo but otherwise denied the request. Appellant filed an amended PCRA petition asserting, among other contentions, that direct appeal counsel was ineffective in failing to develop an argument about the denial of his motion to present his walking gait to the jury, and that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the fact that Nordo had been

_____

[2] Nordo was arrested in 2019 and convicted in 2022 of numerous offenses committed in 2016 and 2017, including official oppression, obstructing the administration of law, securing the execution of documents by deception, and institutional sexual assault. *See Commonwealth v. Nordo*, CP-51-CR-0001856-2019 and CP-51-CR-0004070-2021.

involved in the murder investigation. The court dismissed those two claims without a hearing.[3]

These timely appeals followed and were consolidated by this Court *sua sponte*. The PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and he timely complied, after which the court authored a Rule 1925(a) opinion addressing the enumerated issues. Appellant states his questions for our review as follows:

I. Did the PCRA court err in dismissing [Appellant]'s claim that appellate counsel was ineffective for waiving his claim that the trial court erred in not allowing [Appellant] to demonstrate his walking gait to the jury at trial?

II. Did the PCRA court err in denying [Appellant]'s request for an evidentiary hearing and denying his claim that the Commonwealth violated [**Brady**] when the Commonwealth failed to disclose information about [Nordo]?

III. Did the PCRA court err in denying [Appellant]'s discovery motion to inspect the contents of the Commonwealth's homicide file in light of . . . Nordo's involvement in [Appellant]'s case?

Appellant's brief at 4.

We begin with the applicable legal principles. "[W]e review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned

_____

[3] The court held a hearing as to another claim that is not at issue herein before disposing of the PCRA petition in its entirety.

up). As the PCRA court dismissed the claims at issue in this appeal without an evidentiary hearing, we observe as follows:

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Grayson***, 212 A.3d 1047, 1054 (Pa.Super. 2019) (cleaned up). Overall, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant first challenges the PCRA court's denial of his contention that appellate counsel rendered a constitutionally-deficient performance in failing to obtain review of the trial court's refusal to permit Appellant to demonstrate how he walked. To prevail on this claim, he must establish:

> (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

***Grayson***, 212 A.3d at 1054 (cleaned up). An appellate court is "not required to analyze the elements of an ineffectiveness claim in any order; if a claim

fails under any element of the . . . test, we may proceed to that element first."

***Commonwealth v. Rivera***, 199 A.3d 365, 374 (Pa. 2018).

The PCRA court held that there was no arguable merit to Appellant's claim that appellate counsel was ineffective for failing to obtain review of the trial court's denial of his motion to demonstrate to the jury his manner of walking, relying on the explanation it proffered in its opinion for Appellant's direct appeal:

> Here, [Appellant] sought to demonstrate his walking gait to the jury, as the jury had previously seen surveillance video of an individual, allegedly [Appellant], walking during a robbery. However, over four years had passed since the robbery in question and [Appellant] had both gained and lost over one hundred pounds of weight in that time. The gait of [Appellant] four years later would not have any relevance to [his] possible identity as the individual in the video and would not have provided probative evidence in [his] case. Accordingly, the court did not err in denying [Appellant]'s request.

Trial Court Opinion, 6/12/17, at 38 (cleaned up).

Appellant maintains that this Court would have granted him relief on the claim had counsel properly raised it. He asserts that a comparison of how he walked and how the robber on the video walked was "highly probative of the robber's identity," and thus erroneously excluded. ***See*** Appellant's brief at 13. In support, he relies on our decision in ***Commonwealth v. Spencer***, 639 A.2d 820 (Pa.Super. 1994), suggesting that the case stands for the proposition that evidence of a defendant's distinctive gait is always relevant and admissible to establish identity. ***See*** Appellant's brief at 18.

Appellant's reliance upon **Spencer** is misplaced. In that case, the trial court admitted the testimony of Cindy Wimer, Spencer's parole officer, who identified him as the perpetrator of a robbery upon viewing surveillance video. Specifically, Ms. Wimer stated that she based her identification on Spencer's "distinctive and easily recognized gait" in which he "had a bounce in his step like rolling off a step." **Spencer**, 369 A.2d at 823-24 (cleaned up). On appeal, Spencer contended that the testimony was improperly admitted because Ms. Wimer was not qualified to offer an opinion as to the similarity of the gaits. This Court rejected the challenge, explaining that whether it was fact or opinion testimony, it was properly admitted, as "the witness's opinion that the gaits of the robber and [Spencer] were similar was rationally based on her perception and was essential to a clear understanding of her testimony." **Id**. at 824.

Plainly **Spencer** did not hold that a defendant is permitted to demonstrate for the jury that how he walks is different from the person in video footage of the crime at issue. Indeed, the case did not even involve the type of easily-fabricated demonstrative evidence Appellant sought to offer. Rather, **Spencer** stands for the proposition that a witness is permitted to testify as to the identity of the person observed committing a crime from personal knowledge of a particular characteristic that the perpetrator shared with the defendant based upon the defendant's regular display of that attribute when there was no reason for him to alter his natural mannerisms.

- 7 -

As the trial court's rationale for declining to give Appellant the opportunity to affect a gait distinguishable from the man in the video does not evince an abuse of discretion, we conclude that the ineffectiveness claim lacks arguable merit. Thus, the PCRA court properly denied it.

We consider together Appellant's remaining arguments that the PCRA court erred in denying, without discovery or a hearing, his **Brady** claim founded upon Nordo's involvement in his case. Our Supreme Court summarized the law governing substantive **Brady** claims as follows:

> In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the **Brady** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

***Commonwealth v. Lambert***, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Our High Court has further indicated that, "although substantive ***Brady*** claims may be cognizable under the PCRA, ***Brady*** does not govern the question of the scope of discovery under the PCRA." ***Commonwealth v. Williams***, 86 A.3d 771, 788 (Pa. 2014). We presume that the Commonwealth complied with its continuing ***Brady*** obligations and there is "no specific right in the defendant to review the Commonwealth's file to see, for example, if he agrees with the Commonwealth's assessment and representation" that all ***Brady*** material had been produced. ***Id***.

Rather, the "right to PCRA discovery is governed by [Pa.R.Crim.P. 902(E),] not by ***Brady***." ***Id***. at 789. That rule provides that, except in first counseled petitions in death penalty cases, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). Whether exceptional circumstances exist is a matter for the PCRA court's discretion. ***See Commonwealth v. Wharton***, 263 A.3d 561, 573 (Pa. 2021). We have held that "mere speculation that exculpatory evidence might exist does not constitute an exceptional circumstance warranting discovery." ***Commonwealth v. Frey***, 41 A.3d 605, 612 (Pa.Super. 2012). "Instead, discovery requests in the PCRA setting must be accompanied by an explanation why the exculpatory information was unavailable to prior counsel and must identify specific documents or items that were not disclosed pre-

trial or during the trial proceedings." **Commonwealth v. Tedford**, 228 A.3d 891, 909 (Pa. 2020).

Appellant argues that the PCRA court erred in dismissing his **Brady** claim without a hearing because the Commonwealth knowingly failed to disclose Nardo's misconduct and the evidence thereof would have undermined the Commonwealth's case against him since Nardo took a statement from one of the witnesses who identified Appellant.[4]  **See** Appellant's brief at 20-21. Appellant suggests these circumstances entitled him to both a hearing on the substantive claim and an inspection of the Commonwealth's file for the case. **Id**. at 22-23.

Here, the PCRA court rejected Appellant's **Brady** claim because, *inter alia*, he could not establish that he was prejudiced by the lack of disclosure of Nardo's misconduct in other cases.  In particular, the court noted that Appellant identified no connection between the established misconduct and his case.  Also, Nardo's involvement in Appellant's case was limited to taking the statement from Jessica Nunez in which she identified Appellant's co-defendant as one of the robbers and transporting her to the interview

---

[4] Appellant asserts that the Commonwealth "conceded in other cases that it had actual knowledge of Nardo's misconduct dating back to at least 2005." Appellant's brief at 20.  The Commonwealth both disputes the accuracy of this claim and contends that it cannot form the basis for relief because Appellant raised it for the first time on appeal.  **See** Commonwealth's brief at 17-19. Since we conclude *infra* that the **Brady** claim fails for lack of prejudice, we need not decide whether the Commonwealth had actual knowledge of relevant misconduct by Nardo misconduct at the time Appellant was tried.

conducted by other detectives in which she identified Appellant. ***See*** PCRA Court Opinion, 4/3/24, at 11. Further, "Jessica Nunez never alleged any improper conduct from Nordo, or any other detective, and she testified [at trial] consistently with her prior statements." ***Id***. Finally, the PCRA court observed that "there was compelling evidence having no connection to Nordo that established [Appellant]'s guilt, including [his] confession to the murders in his statement to Detective Thomas Gaul." ***Id***. at 11-12. Accordingly, the court determined that no hearing was required for it to reject the ***Brady*** claim.

Concerning the discovery request, the PCRA court ruled that Appellant had failed to demonstrate the requisite exceptional circumstances. It observed that, in response to Appellant's discovery requests, the Commonwealth voluntarily provided a copy of the discovery packet from the file and then, upon the court's direction, reviewed the entire homicide file to ensure it contained no ***Brady*** material concerning Nordo. After doing so, the Commonwealth represented to Appellant and the court that no such material was in the file. Therefore, the court determined that Appellant had failed to establish that his review of the entire file was warranted. ***Id***. at 13.

We discern no abuse of discretion by the PCRA court as to any of these rulings. Appellant has cited no material evidence that undermines confidence in the outcome of his trial. Rather, armed with knowledge that Nordo committed acts of misconduct in other cases, Appellant seeks to go on a fishing expedition for misconduct in his case in which Nordo had tangential

involvement with one among the many pieces of evidence, including his own statement, establishing Appellant's identity as one of the robbers. The PCRA court acted within its discretion in holding that Appellant's allegations warranted no discovery, hearing, or relief. **Accord Commonwealth v. Barreto**, 258 A.3d 531, 2021 WL 2472947, at *3 (Pa.Super. 2021) (non-precedential decision) (rejecting challenges founded upon the misconduct of Nordo and other detectives in unrelated cases where their involvement in the case *sub judice* was *de minimis*). Thus, no relief is due.

As Appellant has failed to establish that the PCRA court committed an error of law or abuse of discretion in dismissing his petition, we affirm the order doing so.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024